324 S.E.2d 128

**Janet PAULEY, et als., etc.**

v.

**Larrie BAILEY, etc., et als.**

**No. 16232.**

Supreme Court of Appeals of West Virginia.

Dec. 12, 1984.

---

See also, 171 W.Va. 651, 301 S.E.2d 608.

Daniel F. Hedges, Charleston, David C. Long, Washington, D.C., for petitioners.

Silas Taylor, Asst. Atty. Gen., Brentz Thompson, W.Va. Dept. of Ed., Charleston, for respondent W.Va. Bd. of Educ.

Joseph R. Goodwin, Goodwin & Goodwin, Charleston, for amicus curiae W.Va. Bankers Associates.

McHUGH, Chief Justice:

This action is before this Court upon the petition for a writ of certiorari to the Circuit Court of Kanawha County. The petitioners are Janet Pauley, parent of children attending Lincoln County schools, Janet Pauley's children, and all others similarly situated. The respondents are various agencies and officials of the State of West Virginia and Lincoln County that are concerned with the system of education in this State and the financing of that system.

I

In 1975, a class action was filed in the Circuit Court of Kanawha County by the parents of five children attending school in Lincoln County, West Virginia. The plaintiffs alleged that, as a result of the existing discriminatory mechanism for financing the State's educational system, they were being denied a "thorough and efficient system of free schools" under the provisions of *W.Va. Const.* art. XII, § 1,[1]

and equal protection under our laws in violation of *W.Va. Const.* art. III, §§ 10 and 17.[2] Although it originally found a disparity in the educational opportunities afforded to the residents of the various counties, the circuit court denied the plaintiffs' motion for summary judgment and dismissed the action pursuant to the defendants' motion to dismiss under *W.Va.R. Civ.P.* 12(b)(6). The circuit court found that the plaintiffs had not demonstrated the application of equal protection concepts to the controversy.

In *Pauley v. Kelly,* 162 W.Va. 672, 255 S.E.2d 859 (1979), this Court reversed the dismissal of the action by the circuit court holding that the plaintiffs' complaint was sufficient to withstand attack under *W.Va. R.Civ.P.* 12(b)(6); and, that if the defendants had moved for summary judgment, the action should not have been dismissed because there were many genuine issues of material fact yet to be resolved. This Court remanded the case "for further evidentiary development" and noted that because "there are significant and far-reaching public issues involved, it is advisable that we propose certain guidelines to the Circuit Court." 162 W.Va. at 677, 255 S.E.2d at 863.

In the course of reviewing similar state constitutional provisions across the country that require a "thorough and efficient" system of education, we held in syllabus point 3 of *Pauley v. Kelly, supra,* that "[t]he mandatory requirements of 'a thorough and efficient system of free schools' found in Article XII, Section 1 of the West Virginia Constitution, made education a fundamental, constitutional right in this State." Furthermore, we held in *Pauley v. Kelly, supra,* at syllabus point 4: "Because education is a fundamental, constitutional right in this State, under our Equal Protec-

---

1. *W.Va. Const.* art. XII, § 1, provides in full: "The legislature shall provide, by general law, for a thorough and efficient system of free schools."

2. *W.Va. Const.* art. III, § 10, provides: "No person shall be deprived of life, liberty, or property, without due process of law...." *W.Va. Const.* art. III, § 17, provides: "The courts of this State shall be open, and every person, for an injury done to him, in his person, property

or reputation, shall have remedy by due course of law; and justice shall be administered without sale, denial or delay." Both constitutional provisions have been considered by this Court to embody the concept of equal protection under the law. *See Peters v. Narick,* 165 W.Va. 622, 270 S.E.2d 760 (1980); *Thorne v. Roush,* 164 W.Va. 165, 261 S.E.2d 72 (1979); *Pauley v. Kelly,* 162 W.Va. 672, 255 S.E.2d 859 (1979); *State ex rel. Harris v. Calendine,* 160 W.Va. 172, 233 S.E.2d 318 (1977).

tion Clause any discriminatory classification found in the State's educational financing system cannot stand unless the State can demonstrate some compelling State interest to justify the unequal classification." This Court defined the parameters of a "thorough and efficient" educational system and finally held that the legislature has the constitutional duty "to develop a high quality Statewide education system." *Pauley v. Kelly, supra,* at syl. pt. 5.

The circuit court was specifically directed in *Pauley* to inquire whether the lack of a high quality educational system is the result of a failure to follow existing statutes and standards or whether it is due to an inadequacy of the existing system; whether the financing of the existing educational system is equitable on the state and local levels, including investigation into the efficacy of state supplemental aid to county school systems and distribution of the State School Building Fund, and the disparity in property values and property assessment among the counties; whether various State agencies and officials are performing their constitutional and statutory duties with respect to education, including the State Board of School Finance, West Virginia Board of Education, State Superintendent of Schools and State Tax Commissioner; and whether local school officials are properly performing their statutory duties. This Court also suggested that the suit be amended to include the Speaker of the House and President of the Senate as defendants. *Pauley v. Kelly, supra* 162 W.Va. at 695–698, 255 S.E.2d at 878–83.

As noted above, the action was remanded to the circuit court and, after exhaustive testimony on the various issues, the Circuit Court of Kanawha County issued a 244-page *Opinion, Findings of Fact and Conclusions of Law and Order,* (hereinafter *"Opinion")* entered May 11, 1982, in which the circuit court, pursuant to the directives of this Court in *Pauley v. Kelly, supra,* found broad and comprehensive constitutional inadequacies in the structure and composition of West Virginia's current educational system, and found the same constitutional infirmities in the financial mechanism that surrounds that system.

In the opinion, the circuit court outlined, based upon the voluminous expert evidence gathered during the lengthy proceedings, the core elements of a "thorough and efficient" educational system. The elements were classified into the broad categories of curriculum, personnel, facilities and materials and equipment. By comparison, the circuit court found the systems now in existence in Lincoln County and other counties across the State to be "woefully inadequate." The circuit court further found that some counties, mostly those with greater property wealth, had educational systems that come close to "thorough and efficient," however, the court determined that all county systems required improvement.

The circuit court reviewed the State standards that exist for classifying and rating schools and found that they are "subminimal" and bear no relationship to a high quality educational system. In 1965, the West Virginia Board of Education adopted, pursuant to *W.Va.Code,* 18–2–23 [1965], the Comprehensive Educational Program (C.E.P.) in an attempt to establish specific standards for education around the State. The court found, however, that although the C.E.P. contained some elements of a high quality educational program, it was never monitored by the State Board at the county level and, as a result, faded into obsolescence. The State Board adopted other documents such as *Standards for Educational Quality,* but the court found them to be little more than a general restatement of statutory policies.

The circuit court also found that the mechanism for financing education in West Virginia is discriminatory because it favors counties that are property-wealthy and, in some circumstances, punishes counties that are sparse in population and property-poor. The court found a positive correlation between the quality of a county's educational system and its wealth of real and personal property; and, conversely, found a negative correlation between the lack of quality education in a county and its low property

values.[3]

In its conclusions of law, the circuit court determined that "[t]he State has a duty to develop legally recognized elements of a thorough and efficient system of education in every child to his or her capacity, by providing high quality programs to children of all abilities." *Opinion*, Conclusion of Law No. 5. The circuit court interpreted this duty to mean that all direct and indirect costs of educational programs around the State must be fully included in the State financing structure deemphasizing financing on the county level.

The circuit court ruled that West Virginia's current educational system and its financing mechanism are unconstitutional under *W. Va. Const.* art. XII, § 1, and *W. Va. Const.* art. III, §§ 10 and 17, and that the State has a duty to eliminate the effects of this unconstitutionality.

Specifically, the court decided that the West Virginia Board of Education has violated its statutory duty to determine educational policies of the State in conformity with constitutional and statutory mandates. *See W. Va. Const.* art. XII, § 2; *W. Va. Code*, 18–2–5 [1983]; *W. Va. Code*, 18–2–23 [1980]; *W. Va. Code*, 18–9A–22 [1981]. The circuit court held that the standards promulgated by the Board "have been far too general and minimal to define the elements of a thorough and efficient system of education for the State." *Opinion*, Conclusion of Law No. 50(a). The circuit court determined that, generally, the West Virginia Board of Education has failed to perform its constitutional and statutory duties with respect to formulating high quality standards for education and classification of schools, nor is it meeting its supervisory responsibilities over the county systems.[4] *See W. Va. Code*, 18–2–23 [1980]; *W. Va. Code*, 18–9A–22 [1984].

In the final analysis, the court determined that the "overriding cause" of the current unconstitutional educational system is "inadequate and inequitable" funding. Consequently, the circuit court ordered the appointment of a special master to oversee the development of a master plan for the constitutional composition, operation and financing of the educational system in West Virginia.[5] The master plan was to thereafter be submitted to the circuit court for its approval. The circuit court also retained jurisdiction in the case when it stated at 223 of the *Opinion:* "This Court shall retain continuing jurisdiction to insure the implementation of the approved plan by the appropriate state and county officials."

Pursuant to the directives of the circuit court, the defendants developed and submitted for the court's approval *A Master Plan for Public Education* (hereinafter "*Master Plan*"). The *Master Plan* is an extensive compilation of detailed concepts and standards that defines the educational role of the various state and local agencies, sets forth specific elements of educational programs, enunciates considerations for educational facilities and proposes changes in the educational financing system.

In a final order entered March 4, 1983, (hereinafter *"Final Order"*) the circuit court substantially approved the *Master*

---

**3.** The circuit further found that all counties in West Virginia are currently assessing their real property inadequately. However, for appeal purposes, this issue was later bifurcated from the educational issues of the case because proposed amendments to the West Virginia Constitution that would affect the conclusions of the circuit court were pending before the voters of this State.

**4.** The circuit court ruled, however, that the statutory framework for the administration of the educational system, that is, the West Virginia Board of Education, State Superintendent of Schools, county boards of education and county superintendents, and the budgeting and accounting systems employed were effective and constitutional. Furthermore, the court found that the Lincoln County school officials were fulfilling their duties.

**5.** The defendants originally challenged the appointment of the special master in this Court, however, most of the defendants abandoned the appeal. One defendant continued the appeal but the appointment of the special master was approved by this Court in an order entered September 23, 1982. The defendants subsequently approached the circuit court to appoint a special committee for the development of the master plan and the circuit court granted such request.

*Plan* submitted by the defendants. The court noted in its order: "The master plan is a commendable document, representing many hours of intense labor. For the most part, the plan is shaped to the contours of Pauley v. Kelley, [sic] supra., and the case *sub judice,* with remarkable fidelity." *Final Order* at 3.

There were two exceptions, however, to the circuit court's final approval of the *Master Plan.* First, the *Master Plan* proposed a four-phase, 17-year schedule for full implementation of the plan.[6] Instead, the court ordered implementation of the *Master Plan* at the "earliest practicable time." Second, the circuit court found the *Master Plan* to be contrary to previously enumerated standards because it did not contain a grievance procedure for parents and other concerned citizens to question the system.

The thrust of the petitioners' allegations in the action before this Court focuses primarily upon the state level respondents that are directly concerned with public education: the West Virginia Board of Education and the State Superintendent of Schools. The petitioners assign the following errors: (1) the trial court erred when it failed, in the *Final Order,* to provide specific enforcement of the administrative duties of the State educational respondents, including a specific requirement that these respondents adopt and conform their conduct to the constitutionally approved standards contained in the *Master Plan;* and (2) the trial court erred when it did not impose an actual timetable upon such respondents for full and complete implementation of the *Master Plan.*

The respondents do not directly rebut the assertions of the petitioners. The respondents simply contend that it was within the sound discretion and authority of the circuit court to enter the *Final Order* of March 4, 1983, and that the circuit court did not therefore abuse its discretion when it failed to impose specific time limitations upon the defendants for full implementation of the *Master Plan.* The respondents further challenge whether this Court is the proper forum for the petitioners to seek enforcement and review of the lower court's order and the current actions of the West Virginia Board of Education and State Superintendent of Schools inasmuch as the circuit court retained continuing jurisdiction over the controversy until full implementation of the *Master Plan* is completed.

## II

It should be noted at the outset that the *Master Plan* itself is not before this Court for review. The petitioners only initially contend that the circuit court erred, perhaps inadvertently, when it failed to specifically order the implementation and enforcement of the *Master Plan* by the State educational respondents. The petitioners assert that as a result of such failure these respondents have been allowed to continue the operation of the educational system that was found constitutionally and statutorily repugnant in the May 11, 1982 *Opinion* of the circuit court.[7] The petitioners seek a directive from this Court that will compel the West Virginia Board of Education and the State Superintendent of Schools to specifically implement and enforce the *Master Plan* and otherwise perform their constitutional and statutory

---

6. The *Master Plan* states at 3:

The master plan provides that equitable high quality programs, activities, and services will be implemented over four phases. The first and second phases are three years each with phases three and four being five and six years respectively. The plan calls for a thorough and efficient system of education to be fully in place by the year 2000.

7. Specifically, the petitioners allege that the respondents have failed to establish quality standards for education in this State pursuant to

*W.Va.Code,* 18–9A–22 [1981]. Furthermore, with the lack of high quality standards, the respondents are unable to monitor county educational systems to insure their constitutional operation nor can they properly approve the construction of new educational facilities pursuant generally to article 9C, chapter 18 of the West Virginia Code. Finally, the petitioners contend that the respondents have failed to submit for inclusion in the executive budget proposal to the legislature appropriations requests for implementation of the *Master Plan.*

duties with respect to education in West Virginia.

The duties and obligations of the State educational respondents with respect to high quality education are clearly set forth in the Constitution and statutes of West Virginia and underpinned the determination by the circuit court that the West Virginia Board of Education and State Superintendent of Schools were, at least, partially responsible for our lack of a "thorough and efficient" educational system.

*W. Va. Const.* art. XII, § 2, provides: "The general supervision of the free schools of the State shall be vested in the West Virginia board of education which shall perform such duties as may be prescribed by law." The same constitutional provision continues: "The West Virginia board of education shall in the manner prescribed by law, select the state superintendent of free schools who shall serve at its will and pleasure. He shall be the chief school officer of the State and shall have such powers and shall perform such duties as may be prescribed by law." In chapter 18 of the West Virginia Code, the legislature has enumerated the duties and responsibilities of the West Virginia Board of Education and the State Superintendent of Schools.

In addition to its general supervisory control over the system of free schools in West Virginia as provided by the Constitution, *W. Va. Code*, 18–2–5 [1983], provides: "Subject to and in conformity with the constitution and laws of this State, the state board of education shall determine the educational policies of the State and shall make rules for carrying into effect the laws and policies of the State relating to education...." "The West Virginia board of education, through the state superintendent of schools, shall establish standards and criteria especially designed to guide the development of plans for a comprehensive educational program or programs in county school systems, [and] to provide for their evaluation and approval...." *W. Va. Code*, 18–2–23 [1980].

In 1981, the legislature established a deadline for the development of standards for educational quality by the West Virginia Board of Education. *W. Va. Code*, 18–9A–22 [1981]. As noted above, the standards previously developed by the Board pursuant to this section and those cited above were found by the circuit court in its May 11, 1982 *Opinion*, to be "far too general and minimal to define the elements of a thorough and efficient system of education for the state." *W. Va. Code*, 18–9A–22 [1981], provided, in part: "On or before January one, one thousand nine hundred eighty-two, the state board of education shall establish and adopt standards for quality education and shall provide each county board of education a copy thereof."

The legislature recently amended that statutory provision, the effect of which is to extend the deadline by which the Board must develop such standards. However, the language of the current law evinces a clear intent on the part of the legislature to compel the West Virginia Board of Education to immediately exercise its duties to establish "high quality" standards for the implementation of a constitutional system of education. *W. Va. Code*, 18–9A–22 [1984], currently provides, in part:

The purpose of this section is to declare the intent of the legislature to provide a thorough and efficient system of education for West Virginia public school students. High quality educational standards shall be provided all public school students on an equal educational opportunity basis. A system for the review of county educational plans and the on-site reviews of county educational programs shall provide assurances that the high quality standards, established pursuant to this section, are being met.

On or before January one, one thousand nine hundred eighty-five, the state board of education shall establish and adopt high quality educational standards and shall provide each county board of education a copy thereof.

As mentioned above, we held in syllabus point 3 of *Pauley v. Kelly, supra:* "The mandatory requirements of 'a thorough and efficient system of free schools' found in Article XII, Section 1 of the West Virgi-

174

nia Constitution, make education a fundamental, constitutional right in this State." *See also Potter v. Miller*, 168 W.Va. 601, 287 S.E.2d 163 (1981). "Our Constitution manifests, throughout, the people's clear mandate to the Legislature, that public education is a *prime* function of our State government. We must not allow that command to be unheeded." *Pauley v. Kelly*, *supra* 162 W.Va. at 719, 255 S.E.2d at 884 (emphasis in original). *See also Detch v. Board of Education of County of Greenbrier*, 145 W.Va. 722, 117 S.E.2d 138 (1960); *State ex rel Trent v. Sims*, 138 W.Va. 244, 77 S.E.2d 122 (1953).

In syllabus point 1 of *State ex rel. Board of Education, County of Kanawha v. Rockefeller*, 167 W.Va. 72, 281 S.E.2d 131 (1981), this Court made it abundantly clear that "[t]he provisions of Article XII, Section 1 *et seq.*, ... when construed in the light of our prior cases, gives a constitutionally preferred status to public education in this State." Moreover, as we noted in *State ex rel. Brotherton v. Blankenship*, 157 W.Va. 100, 125, 207 S.E.2d 421, 436 (1973), the aforementioned constitutional mandate with respect to education in this State

adequately reflects the will of the people, through the basic law enacted by them, that a thorough and efficient system of free schools is of paramount importance in a free society and that neither the Legislature nor the executive branch of government may perform any act which would result in the elimination of this safeguard.

Recently, in *Bailey v. Truby*, 174 W.Va. 8, 321 S.E.2d 302 (1984), this Court was asked to determine, *inter alia*, whether the West Virginia Board of Education is empowered by the Constitution and statutes of this State to promulgate a rule that requires students to maintain a 2.0 grade point average to participate in nonacademic extracurricular activities. In holding that the Board is empowered to impose such an academic requirement upon county boards of education under *W.Va.Const.* art. XII, § 2, and its "broad grant of rule-making authority" under *W.Va.Code*, 18–2–5 [1983], we noted that "[t]he State Board of Education, charged with the general super-

vision of our state's educational system, has a duty to ensure that the constitutionally mandated educational goals of quality and equality are achieved." *Bailey v. Truby, supra* 174 W.Va. at 16, 321 S.E.2d at 310.

The circuit court held in the *Final Order* that the *Master Plan*, with noted exceptions,

adopts a comprehensive description of standards for a high quality system of education, necessary to establish a foundation for learning in West Virginia schools, which may be construed as a recommendation to the Legislature as an example of a thorough and efficient system as defined in *Pauley v. Kelley*, [sic] supra.

The plan is structured in a manner to address the critical deficiencies which require remedial action in, (1) establishing the standards of a high quality system of education, using as a guide the four (4) components of that system: curriculum, personnel, facilities, and materials and equipment; and (2) the financing of a thorough and efficient system of education.

*Final Order* at 3. The court further held that the *Master Plan* provides "an adequate blueprint for both legislative and executive action." *Id.* at 6.

We believe that it is sufficiently clear from the language of the *Final Order*, and the tenor and language of the May 11, 1982 *Opinion* of the circuit court, that the State educational respondents have a specific duty to implement and enforce the policies and standards of the *Master Plan*. In any event, based upon all of the above, we hold that the West Virginia Board of Education and the State Superintendent of Schools, pursuant to their general supervisory powers over education in West Virginia under *W.Va.Const.* art. XII, § 2, and their specific duties to establish, implement and enforce high quality educational standards for all facets of education under the provisions of Chapter 18 of the West Virginia Code, have a duty to ensure the complete executive delivery and maintenance of a "thorough and efficient system of free

schools" in West Virginia as that system is embodied in *A Master Plan for Public Education* which plan was proposed by agencies of the executive branch and found constitutionally acceptable by the Circuit Court of Kanawha County, and that plan will be enforced until such time as it is altered or modified by this Court or the circuit court.

The petitioners have set forth specific allegations to support their contention that the State educational respondents are not affirmatively seeking to implement the policies and standards contained in the *Master Plan. See supra* note 7. The primary assertion of the petitioners is that the West Virginia Board of Education is not currently performing its statutory duties under *W. Va. Code*, 18–9A–22 [1981], to develop quality educational standards for the operation and monitoring of the county school systems in relation to the *Master Plan*. The petitioners have attached to their brief two recently developed and officially promulgated written policies of the West Virginia Board of Education that the petitioners allege are the sole efforts by the State Board to comply with this duty since the circuit court entered the *Final Order* substantially approving the *Master Plan*. The petitioners assert that these policies contain the same generalities that the circuit court, in its May 11, 1982 *Opinion*, considered fatal to the Board's prior attempt to develop standards for educational quality. *See supra* at 6–7. The policies in question are designated as Board Policy § 2510 and Board Policy § 2321.

Board Policy § 2510 is entitled *Regulations for General, Vocational and Special Education Programs*. Board Policy § 2510 states: "The major purposes of the regulations are to improve the quality of learning and teaching in public schools and to assure that equal educational opportunities are provided to all public school students." Board Policy § 2510 at 1. In the language of the Policy itself:

The regulations identify and describe the following elements of a thorough and efficient system of education:

1. high quality educational programs and services;

2. required administrative and instructional practices, personnel, facilities, and instructional materials, supplies and equipment; and

3. accountability measures needed to assure the public that a thorough and efficient system of education is being provided students enrolled in the public schools of West Virginia.

*Id.*

The petitioners assert, and it is apparent from its reading, that Board Policy § 2510 is nothing more than an outlined version of selected portions of the *Master Plan*. The Policy reiterates the general statutory responsibilities of the various state and county educational agencies, sets forth definitions of nomenclature, contains charts illustrating the proposed changes in curriculum over the first three phases of the *Master Plan*, and broad statements of policy concerning personnel, facilities, and materials and equipment. Board Policy § 2510 excludes any definitions or details with respect to specific components of curriculum such as art, computer education, foreign languages, mathematics, music, physical education, science and special education.

Board Policy § 2321 is entitled *Indicators of Attainment for Standards for Educational Quality*. Board Policy § 2321 contains general standards and considerations for county boards of education in the areas of curriculum, personnel development, finance, food service, instruction, organization and administration, personnel management, planning and evaluation of educational programs, school-community relations, students and transportation.

It is clear that Board Policies §§ 2510 and 2321 both suffer from the same infirmities that caused the circuit court, in its May 11, 1982 *Opinion*, to find that the West Virginia Board of Education had failed in its prior attempt to define and establish standards for educational quality under *W. Va. Code*, 18–9A–22 [1981]. The circuit court found that those standards were "nothing more than a restatement of general principles already existing in stat-

utes and West Virginia Board policy. They do not help define the kinds of educational offerings and services needed for a thorough and efficient system of education." *Opinion*, Findings of Fact No. 109. The circuit court clearly indicated that any future policies established by the West Virginia Board of Education would also fail if they were "lacking in specificity." *Opinion*, Findings of Fact No. 110.

■ Although the respondents contend that this Court should refrain from addressing this issue inasmuch as the circuit court has never had the opportunity to review these current Board Policies under its reservation of continuing jurisdiction until full implementation of the *Master Plan* is completed, for the sake of economy of judicial time we hold Board Policies §§ 2510 and 2321 of the West Virginia Board of Education, standing alone, do not comply with the statutory duty of the West Virginia Board of Education, under *W. Va. Code*, 18–9A–22 [1981], to establish quality educational standards for the operation of the county school systems in West Virginia, nor will such policies comply with the duty of the West Virginia Board of Education, under the 1984 amended version of that statute, to establish "high quality" educational standards for the operation of the county school systems in West Virginia as such standards are detailed in *A Master Plan for Public Education*. As noted above, the petitioners allege other examples of the State educational respondents' failure to implement the *Master Plan, see supra* note 7, however, there is insufficient evidence before this Court upon which to make a proper determination regarding those matters.

### III

The petitioners finally assert that the trial court erred when it failed, upon disapproval of the 17-year implementation plan proposed by the respondents, to impose its own specific timetable for full implementation of the *Master Plan*. The circuit court stated in the *Final Order* at 4–5:

This Court does not consider it appropriate at this time to recommend any fixed timetable. The Legislature should initially be given an opportunity to do this. Certainly it must be recognized that some gradual implementation of the proposed legislative program is justified. A phasing structure based upon a system of priorities must be viewed as an inevitable result of years of prior inattention to the needs of public education throughout this State. However, the time sequence of complete implementation must be measured by establishing priorities in conformity with the plan, tempered by available resources, so as to guarantee that a thorough and efficient system of free schools is available at the earliest practicable time.[8]

The petitioners seek an order from this Court directing the circuit court to impose an expeditious timetable upon the respondents for full implementation of the *Master Plan*.

The petitioners, however, have presented no evidence to this Court to support their contention that a specific timetable would be efficacious at this time. It is the opinion of this Court that in the absence of such

---

8. The circuit court continued in the *Final Order* at 6–7:

In the final analysis, the legislature and executive branches must be given an opportunity to address the fundamental changes necessitated by the judicial pronouncement that what now exists does not conform to West Virginia Constitution Article XII, § 1.

However, deferral to the Legislative and Executive branches to rectify the problems associated with education in this State, should not be interpreted as an abdication of judicial responsibility, but instead, as a good faith attempt to allow these branches the opportunity to act.

Both the legislative and executive branches have the primary responsibility for elucidating, articulating and solving the myriad of problems raised in both *Pauley v. Kelley*, [sic] supra., and the case *sub judice*. Once these branches of government act, this Court will then have to consider whether their action constitutes a good faith implementation of governing constitutional principles announced herein. As previously indicated, during this period of transition to a thorough and efficient system of free public schools, this Court will retain jurisdiction.

evidence the ruling of the circuit court that full implementation of the *Master Plan* should be completed "at the earliest practicable time" should not be disturbed. As noted above, the circuit court has retained continuing jurisdiction over the present case until full implementation of the *Master Plan* is accomplished. Further assertions concerning the imposition of specific time guidelines upon the respondents and the failure of the respondents to perform their constitutional and statutory duties with respect to education in West Virginia should more properly be addressed to the circuit court.

Based upon all of the above, this case is hereby remanded to the Circuit Court of Kanawha County for further monitoring of the implementation of the *Master Plan* consistent with the principles set forth in this opinion.

Remanded.

NEELY, Justice, dissenting:

Although today's holding is consistent with our decision in *Pauley v. Kelly*, 162 W.Va. 672, 255 S.E.2d 859 (1979) I dissent because I would overrule *Pauley v. Kelly*. My reasons are adequately expressed in my dissenting opinion in *Pauley v. Kelly*, 162 W.Va. at 743, 255 S.E.2d at 897.