465 S.E.2d 648

**Valerie COWEN, Gwen Cowen, Debra Dodd, and Lisa DeMarco, Appellees,**

v.

**HARRISON COUNTY BOARD OF EDUCATION, Appellant.**

**No. 22704.**

Supreme Court of Appeals of West Virginia.

Submitted Sept. 20, 1995.

Decided Dec. 13, 1995.

Webster J. Arceneaux, III, Lewis, Friedberg, Glasser, Casey & Rollins, Charleston, for Appellees.

Basil R. Legg, Jr., David J. Romano, Law Office of David J. Romano, Clarksburg, for Appellant.

RECHT, Justice:

The Harrison County Board of Education appeals from a Final Order of the Circuit Court of Kanawha County, entered the 29th of July, 1994, requiring it to repost teaching positions at Lumberport Middle School without the requirement that applicants hold Elementary Education 6–8 Certification. On appeal, the Board of Education asserts that the

circuit court erred in (1) finding that the teacher certification requirements established by the Harrison County Board of Education were arbitrary and capricious and not reasonably related to the teaching positions; and (2) applying the doctrine of equitable estoppel against the Board of Education as an additional basis for concluding that the certification requirements were improper.

## I.

## UNDERLYING FACTS AND PROCEDURAL BACKGROUND

In the Fall of 1991, the teaching staff at Shinnston Intermediate School, including the appellees, Valerie Cowen, Gwen Cowen, Debra Dodd, and Lisa DeMarco, attended a breakfast meeting with members of the Harrison County Board of Education (hereinafter "Board") and Robert E. Kittle, Superintendent of the Harrison County Schools. The meeting was held to discuss the ramifications of converting the junior high schools in Harrison County to middle schools.[1] At this meeting, the appellees were informed by Superintendent Kittle and members of the Board that teachers with Elementary Education 1–6 Certification (hereinafter "1–6 Certification") would be eligible to apply for the newly created sixth grade positions at Lumberport Middle School and Bridgeport Middle School. The appellees testified that they left the meeting with the assurance that their Elementary Education 1–6 Certification would be sufficient to secure the newly created middle school positions, and that they would not be required to obtain Elementary Education 6–8 Certification (hereinafter "6–8 Certification").[2]

On February 25, 1992, a listing of vacant positions at Lumberport and Bridgeport Middle Schools was posted by the Board. The qualifications for these middle school positions required an Elementary Education

---

1. The reconfiguration of all grades in Harrison County resulting from the middle school concept would be that the high schools would expand to grades nine through twelve, middle schools would include grades six through eight, and elementary schools would be reduced to grades kindergarten through five. Significant to the resolution of this case, sixth grade would be moved from elementary schools to middle schools.

2. The Board asserts in its brief that Superintendent Kittle was the only one who represented to the appellees that additional certification was unnecessary; however, no evidence was offered to refute the testimony of the appellees that members of the Board also made those representations.

6–8 Certification, contrary to the representations made by the Board and Superintendent Kittle.

After the job vacancies were posted, Ed Stephenson of the West Virginia Education Association telephoned Nile Goff, principal of Lumberport Junior High (now Lumberport Middle School), who verified that the positions posted were essentially sixth grade positions. Mr. Stephenson relayed this information to the appellees. Consequently, the appellees applied for the sixth grade teaching positions without obtaining 6–8 Certification.

At a meeting held on March 11, 1992, the Board filled the vacant positions at Lumberport Middle School and Bridgeport Middle School with teachers other than the appellees.[3] The reason assigned by the Board for rejecting the appellees' applications was that they did not have 6–8 Certification. As a result, the appellees filed a grievance with the West Virginia Education and State Employees Grievance Board on May 5, 1992.

At the Level II hearing, held pursuant to W.Va.Code 18–29–4 (1995),[4] the appellees testified as to what occurred during the breakfast meeting in the Fall of 1991 to the extent that, as a result of that meeting, they were under the distinct impression that they would not need to obtain any additional certification for the newly created teaching positions at either middle school. All of the appellees, with the exception of Valerie Cowen, testified that they could have obtained the additional certification in approximately three weeks, simply by filling out a short form, and without having to take additional courses.[5]

Also during the course of the Level II hearing, testimony developed that at some time after the Fall 1991 breakfast meeting, a decision was made to implement a teaching program known as "cross-teaching," where a group of teachers would instruct students at the sixth grade level, progress with them through the eighth grade, and then begin instruction on another group of sixth grade students. In order to properly implement this program, 6–8 Certification was required. The appellees were never informed of the decision to implement a "cross-teaching" program between the breakfast meeting in the Fall of 1991 and the date of the posting of the vacancies on February 25, 1992.

The Level II decision was adverse to the appellees, with Superintendent Kittle finding that the Board did not violate W.Va.Code 18A–4–7a (1993)[6] because this statute, which

---

**3.** While the vacant positions involved both Lumberport Middle School and Bridgeport Middle School, this appeal involves only those vacancies at Lumberport Middle School.

**4.** W.Va.Code 18–29–4 (1995) provides, in pertinent part:
> (b) Level two.
> Within five days of receiving the decision of the immediate supervisor, the grievant may appeal the decision to the chief administrator, and such administrator or his or her designee shall conduct a hearing in accordance with section six [§ 18–29–6] of this article within five days of receiving the appeal and shall issue a written decision within five days of such hearing. Such decision may affirm, modify or reverse the decision appealed from. Level four hearing examiners or the chief administrator shall have the authority to subpoena witnesses and documents for level two and level three hearings in accordance with the provision of section one [§ 29A–5–1], article five, chapter twenty-nine of this code, and may issue a subpoena upon the written request of any party to the grievance.

**5.** At the time of the Level II hearing in May 1992, Gwen Cowen, Debra Dodd, and Lisa DeMarco had obtained K–8 Certification, which would have been sufficient to satisfy the 6–8 Certification requirement. Valerie Cowen, who had obtained her 1–6 Certification through a program different than the other appellees, testified that obtaining the additional 6–8 Certification would involve "a little bit of a different process," including submission of her transcript. Testimony from the Level II hearing did not reveal whether Valerie Cowen would need to take additional courses, or how long it would take to obtain her 6–8 Certification.

**6.** W.Va.Code 18A–4–7a (1993) provides, in pertinent part:
> Boards shall be required to post and date notices of all openings in established, existing or newly created positions in conspicuous working places for all professional personnel to observe for at least five working days. The notice shall be posted within twenty working days of such position openings and shall include the job description. Any special criteria or skills that are required by the position shall be specifically stated in the job description and directly related to the performance of the job.

establishes the protocols for filling vacant teaching positions, does not expressly mandate that teaching positions be posted as "grade-specific."

The appellees appealed the Level II decision directly to Level IV,[7] and in a decision dated September 18, 1992, the administrative law judge denied the appellees' grievance by concluding that on the record there was a failure to demonstrate that the Board acted improperly by requiring all applicants for the middle school positions to have 6–8 Certification.

The appellees then filed an appeal of the administrative law judge's decision in the Circuit Court of Kanawha County on October 19, 1992, pursuant to the provisions of W.Va. Code 18–29–7 (1985).[8]

By Order entered July 29, 1994, the circuit court concluded that the Board acted in an arbitrary and capricious manner by posting certification requirements more restrictive than those previously represented to the appellees. The circuit court also found that the Board was estopped from requiring a 6–8 Certification based upon its representations that this certification would not be a necessary prerequisite for appointment to the vacancies at Lumberport Middle School. The circuit court directed the Board to repost all of the positions at Lumberport Middle School without the 6–8 Certification requirements. It is from this decision that the Board now appeals.

## II.

### STANDARD OF REVIEW

The circuit court's conclusion to reverse the administrative law judge's decision was centered on whether the Board of Education of Harrison County acted in an arbitrary and capricious manner by limiting the qualification requirement for Lumberport Middle School to 6–8 Certification. This conclusion requires an interpretation of W.Va.Code 18A–4–7a (1993), which demands that special criteria or skills for a position must be job related.[9]

■ The administrative law judge concluded as a matter of law that the 6–8 Certification was job related. The circuit court disagreed and found as a matter of law that the decision to insist upon a 6–8 Certification was arbitrary and capricious. Our review, then, is one purely of law, with no deference being given to the conclusions of the administrative law judge or the circuit court, so that the

7. W.Va.Code 18–29–4 (1995) provides, in pertinent part:

(d) Level four.

(1) If the grievant is not satisfied with the action taken by the chief administrator [at the Level two hearing], or, if appealed to level three, the action taken by the governing board, within five days of the written decision the grievant may request, in writing, on a form furnished by the employer, that the grievance be submitted to a hearing examiner as provided for in section five [§ 18–29–5] of this article, such hearing to be conducted in accordance with section six of this article within ten days following the request therefor; Provided, That such hearing may be held within thirty days following the request or within such time as is mutually agreed upon by the parties, if the hearing examiner gives reasonable cause, in writing, as to the necessity for such delay.

(2) Within thirty days following the hearing, the hearing examiner shall render a decision in writing to all parties setting forth findings and conclusions on the issues submitted. Subject to the provisions of section seven of this article, the decision of the hearing examiner shall be final upon the parties and shall be enforceable in circuit court.

All information and data generated by the board and in its custody relative to level four decisions and copies of such decisions shall be provided at reasonable cost to any individual requesting it.

8. W.Va.Code 18–29–7 (1985) provides, in pertinent part:

The decision of the hearing examiner shall be final upon the parties and shall be enforceable in circuit court: Provided, That either party may appeal to ... the circuit court of Kanawha County or in the circuit court of the county in which the grievance occurred within thirty days of receipt of the hearing examiner's decision....

The court's ruling shall be upon the entire record made before the hearing examiner, and the court may hear oral arguments and require written briefs. The court may reverse, vacate or modify the decision of the hearing examiner or may remand the grievance to the chief administrator of the institution for further proceedings.

9. *See supra* note 6, for pertinent text of W.Va. Code 18A–4–7a (1993).

standard of judicial review by this Court is de novo. *See Martin v. Randolph County Bd. of Educ.*, 195 W.Va. 297, 304, 465 S.E.2d 399, 406 (1995); *Adkins v. Gatson*, 192 W.Va. 561, 565, 453 S.E.2d 395, 399 (1994).

Through our de novo review, we are persuaded that while the Board did not act in an arbitrary and capricious manner in effecting a decision as to the structure of the curriculum in the middle schools of Harrison County, its refusal to permit the appellees to have a sufficient period of time to obtain the 6–8 Certification was, under the facts and circumstances of this case, arbitrary and capricious.

## III.

## DISCUSSION

■ We have repeatedly recognized that county boards of education have substantial discretion in matters relating to hiring, assignment, transfer, and promotion of school personnel. However, that discretion must be tempered in a manner that is reasonably exercised, in the best interest of the schools, and in a manner which is not arbitrary and capricious. Syllabus Point 3, *Dillon v. Board of Educ. of County of Wyoming*, 177 W.Va. 145, 351 S.E.2d 58 (1986).

We now have no hesitancy in expanding the *Dillon* standard to matters involving curricular programs and the qualification and placement of personnel implementing those programs. *See Pauley v. Bailey*, 174 W.Va. 167, 324 S.E.2d 128 (1984) (holding that the West Virginia Board of Education and the State Superintendent of Schools have a duty to ensure delivery and maintenance of a "thorough and efficient system of free schools" in West Virginia as embodied in *A Master Plan for Public Education*).

We are mindful of the delicate balance measuring the extent of judicial involvement in the public schools of this State and of our obedience to the West Virginia Constitution, which assures every student in West Virginia a thorough and efficient education. *Id.* While we will continue to remain circumspect

in our scrutiny of purely "educational" issues, we will be constantly vigilant in assuring that the constitutional guarantee of a thorough and efficient education is maintained. Requiring the boards of education to act in a manner that is not arbitrary and capricious in matters of curricular programs and personnel assigned to implement those programs, in our view, maintains the balance between these goals.

### A.

*Was the decision requiring 6–8 Certification in the best interest of Harrison County Schools and not arbitrary and capricious?*

■ We are informed by the testimony at the Level II hearing that the Board decided to implement an innovative teaching method known as "cross-teaching" or "cross-teaming." This method groups teachers into teaching teams that follow one class of students from sixth grade through eighth grade. Teachers at Lumberport Middle School could be required to teach eighth grade students, a task exceeding that permitted teachers with 1–6 Certification.

In order for this Court to conclude that the Board acted in an arbitrary and capricious manner in requiring a 6–8 Certification, we must attack the underpinning of that requirement, namely, the decision to implement a "cross-teaming" or "cross-teaching" concept at Lumberport Middle School. We are not willing to interfere with a board's educational discretion in this regard. Based on the record before us, we are not in a position to conclude that this method is not in the best interest of the schools of Harrison County, and certainly, without a sufficient record, we are unwilling to label this decision arbitrary and capricious.[10]

### B.

*Was the conduct of the Board vis-à-vis the appellees arbitrary & capricious?*

■ We are not so reluctant to criticize the Board in adopting a 6–8 Certification

---

10. We find nothing in the record that challenges the "cross-teaching" or "cross-teaming" concept as being contrary to the *Master Plan for Public*

*Education,* found to be constitutionally acceptable in *Pauley v. Bailey,* 174 W.Va. 167, 324 S.E.2d 128 (1984).

after the appellees were specifically informed that the 1–6 Certification would be sufficient to teach at the middle school level. After the Board determined that it would implement a "cross-teaching" program at Lumberport Middle School, it had the responsibility of informing the appellees of that decision in sufficient time so that they could, if they chose, do what might be necessary to obtain 6–8 Certification. This responsibility was an outgrowth of the misinformation that was given to the appellees in the Fall of 1991. The failure of the Board to do everything necessary to put the appellees in parity with their peers, when the lack of parity was the result of being misled by the Board, constitutes conduct which is arbitrary and capricious under *Dillon v. Board of Educ. of County of Wyoming*, 177 W.Va. 145, 351 S.E.2d 58 (1986), as expanded by our decision today, and cannot be tolerated.[11]

The only way that this Court can correct the Board's misconduct toward the appellees is to require a reposting of all the vacancies at Lumberport Middle School after giving the appellees an adequate opportunity to meet the 6–8 Certification requirements.[12] In view of the amount of time that has elapsed since the date of the initial posting on February 25, 1992, it is reasonable to assume that each of the appellees has obtained the necessary certification.[13] However, if this assumption is incorrect, the Board should be entitled to repost the vacant positions no later than February 1, 1996. There may be a number of ramifications to this relief, which might involve the displacement of incumbent teachers who are without fault, and could involve a possible award of back pay and other benefits. However, those matters are not before us today, and until and

unless they are fully developed and properly raised in this Court, we will not comment on what the legal effects will be when the relief required by this decision is implemented.

## IV.

## CONCLUSION

That portion of the judgment of the Circuit Court of Kanawha County that concluded that the Board of Education of Harrison County acted in an arbitrary and capricious manner by requiring an Elementary Education 6–8 Certification for the vacant positions at Lumberport Middle School is reversed. That portion of the judgment of the Circuit Court of Kanawha County that concluded that the Board of Education of Harrison County acted in an arbitrary and capricious manner by not permitting the appellees the opportunity to obtain the necessary certification to be eligible for the vacant positions at Lumberport Middle School requiring an Elementary Education 6–8 Certification is affirmed, and this case is remanded to the Circuit Court of Kanawha County with directions to enter an order requiring the Board of Education of Harrison County to repost the positions at Lumberport Middle School requiring an Elementary Education 6–8 Certification with specific directions that the appellees be given an adequate and sufficient opportunity to obtain the necessary certification to be considered as eligible applicants for the vacant positions at Lumberport Middle School, which opportunity shall not extend later than February 1, 1996.

---

11. The circuit court also applied the doctrine of equitable estoppel in requiring the Board to repost without 6–8 Certification. The circuit court found the misrepresentation of the Board during the meeting of the Fall of 1991 as strength for the application of the estoppel doctrine. Because we have concluded that the Board acted in a manner which was not arbitrary and capricious, insofar as requiring 6–8 Certification, and did act in an arbitrary and capricious manner in not permitting the appellees sufficient time to meet the 6–8 Certification, we need not address the estoppel issue.

12. The scope of the relief requested by the appellees appears to be limited to a request for reposting without a 6–8 Certification. Since we conclude that a 6–8 Certification requirement is properly within the discretion of the Board, the only relief to which the appellees would be entitled is another opportunity to reapply for the vacancies after having an adequate opportunity to meet the 6–8 Certification requirements. We are awarding this relief even though the appellees have not specifically demanded such relief in their grievance. *See* W.Va.R.Civ.P. 54(c).

13. *See supra* note 5.

Reversed, in part; affirmed, in part; and remanded with directions.

MILLER, Retired Justice, sitting by temporary assignment.

ALBRIGHT, Justice, did not participate.