499 S.E.2d 35

**STATE of West Virginia ex rel.
Judy MONK, Petitioner,**

v.

**Honorable David W. KNIGHT, Judge of
the Circuit Court of Mercer County, the
Mercer County Board of Education, and
Gregory Dalton, Respondents.**

No. 24366.

Supreme Court of Appeals of
West Virginia.

Submitted Nov. 4, 1997.

Decided Nov. 24, 1997.

Dissenting Opinion of Chief Justice Workman
Dec. 10, 1997.

George P. Surmaitis, Crandall, Pyles & Haviland, Charleston, and William B. McGinley, Charleston, for Petitioner.

Kathryn R. Bayless, Bayless & McFadden, Princeton, for Mercer County Board of Education.

Mark E. Wills, Wills & Sadler, Princeton, for Dalton.

MAYNARD, Justice:

Petitioner, Judy Monk, seeks a writ of prohibition against the Circuit Court of Mercer County, the Mercer County Board of Education, and Gregory Dalton asking that we prohibit the respondent circuit court from enforcing its order which reversed the decision of the Administrative Law Judge (ALJ) and remanded the case back to the Mercer County Board of Education (Board) to decide whether Monk or Dalton would be chosen to fill a vacant teaching position at PikeView High School. The Board chose Dalton based on specialized training. Monk seeks to prohibit enforcement of this determination. We conclude the writ should be denied.

During the summer months of 1994, the Board posted a notice for a business teacher at PikeView High School. The position was to be filled in accordance with W.Va.Code § 18A–4–7a.[1] Monk and Dalton were both permanently employed instructional personnel and both applied for the vacant position. A committee interviewed the applicants and applied the criteria listed in W.Va.Code § 18A–4–7a in an effort to determine which applicant to hire. The committee recommended that Dalton be hired. The Board awarded the position to Dalton, and he began teaching at PikeView High School when school opened in August 1994.

Monk filed a grievance with the West Virginia Education and State Employees Grievance Board (Grievance Board) pursuant to W.Va.Code § 18–29–1, *et seq.*, Grievance Procedure. The grievance was denied at Level I. At Level II, the hearing examiner determined an error had been made in calculating Monk's total teaching experience. The correct calculation resulted in a tie between the two applicants. The hearing examiner directed the principal of the school to conduct a reassessment of Dalton's and Monk's credentials. The reassessment resulted in a determination that Dalton was more qualified on the basis of specialized training. Monk subsequently appealed to Level IV alleging the reassessment was flawed. The ALJ determined the matter should be remanded to Level I because the grievable event, the reassessment, was different from the assess-

---

1. W.Va.Code § 18A–4–7a (1993) states in pertinent part:

If one or more permanently employed instructional personnel apply for a classroom teaching position and meet the standards set forth in the job posting, the county board of education shall make decisions affecting the filling of such positions on the basis of the following criteria: Appropriate certification and/or licensure; total amount of teaching experience; the existence of teaching experience in the required certification area; degree level in the required certification area; specialized training directly related to the performance of the job as stated in the job description; receiving an overall rating of satisfactory in evaluations over the previous two years; and seniority. Consideration shall be given to each criterion with each criterion being given equal weight. If the applicant with the most seniority is not selected for the position, upon the request of the applicant a written statement of reasons shall be given to the applicant with suggestions for improving the applicant's qualifications.

ment of credentials involved in the original grievance.

The grievance was processed according to the ALJ's order. It was denied at Level II, and the Board declined to address the matter at Level III. The case again proceeded to Level IV. The ALJ reviewed the evidence and found the principal's reliance on the area of specialized training was improper because this particular factor was not contained in the original job posting. Therefore, the area of specialized training could not be given consideration. The ALJ also noted that notwithstanding the error in considering specialized training, the private sector training relied upon by the principal was not specialized training within the meaning of W.Va.Code § 18A–4–7a.[2] The ALJ determined the two applicants were tied for the position. The Board was ordered to fill the vacant position by lottery or random selection.[3]

The random selection was conducted by Roger Daniels, the Director of Human Resources, in the Central Office Conference Room. Dalton and Monk drew numbers out of a box. Both understood the employee who drew the higher number would be awarded the position. Dalton drew a "4" and Monk drew a "5" from the box. Thus, Monk displaced Dalton. Subsequent to the lottery drawing, Dalton filed a grievance at Level I, contending he should not have been removed from his job.

**2.** Monk had been employed as a church secretary and Dalton had been employed as a clerk at an A & P store.

**3.** Dalton did not exercise his right to intervene in the Monk grievance under W.Va.Code § 18–29–3(u) (1992), which states:

(u) Upon a timely request, any employee shall be allowed to intervene and become a party to a grievance at any level when that employee claims that the disposition of the action may substantially and adversely affect his or her rights or property and that his or her interest is not adequately represented by the existing parties.

Even though the superintendent testified at the Level IV hearing that she believed Dalton was the best qualified applicant for the position, the Board did not exercise its authority under W.Va. Code § 18–29–7 (1985) to appeal the Level IV decision to circuit court.

Dalton's grievance was denied at Levels I and II and waived at Level III. At Level IV, the ALJ denied the grievance, stating that:

Under W.Va.Code § 18–29–4(d)(2), decisions of Administrative Law Judges at level four are final upon the parties and shall be enforceable in circuit court, unless timely appealed, as authorized by W.Va.Code § 18–29–7. This clear statutory provision provides no authority for the undersigned administrative law judge to interpret, clarify or otherwise amend the decision of another administrative law judge at Level IV. Indeed, this Grievance Board has declined to permit employees to grieve actions which directly result from a board of education's implementation of a grievance decision adjudicated at the lower levels of the grievance procedure provided in W.Va. Code §§ 18–29–1, et seq. (citations omitted).

As correctly noted by MCBE, Grievant is making a collateral attack on the Monk decision. If Grievant is permitted to challenge the Monk ruling in this proceeding, and he prevails, why should Ms. Monk, who likewise failed to intervene in this matter, not be allowed to make a collateral attack on this decision? The obvious answer is that this would permit the parties to engage in endless rounds of litigation.

Dalton appealed the unfavorable decision to the circuit court, pursuant to W.Va.Code § 18–29–7 (1985).[4] The court issued a decision reversing the ALJ, stating:

**4.** W.Va.Code § 18–29–7 (1985) provides:

The decision of the hearing examiner shall be final upon the parties and shall be enforceable in circuit court: Provided, That either party may appeal to the circuit court of the county in which the grievance occurred on the grounds that the hearing examiner's decision (1) was contrary to law or lawfully adopted rule, regulation or written policy of the chief administrator or governing board, (2) exceeded the hearing examiner's statutory authority, (3) was the result of fraud or deceit, (4) was clearly wrong in view of the reliable, probative and substantial evidence on the whole board, or (5) was arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. Such appeal shall be filed in the circuit court of Kanawha County or in the circuit court of the county in which the grievance occurred within thirty days of re-

It is necessary to consider this grievance along with the grievance of *Monk v. Mercer County Board of Education* in order to arrive at a fair and equitable decision here. Where two employees are "tied" in reference to the qualifications under the law for a professional position, a Board of Education should be allowed to exercise its discretion and choose the candidate of its choice in order to break the "tie" between two applicants; the Board of Education should first make a decision on whether or not it wishes to break the tie by doing so. If the Board of Education chooses not to break the tie by exercising its discretion in that manner, then and only then should some random choice procedure be used to decide who obtains the job and that random selection process for the job at issue here should be established by the employees, subject to Board approval. Such an approved random selection process was not in place at the time the position was awarded to Ms. Monk.

The Court holds that the decision of Administrative Law Judge Brewer issued on July 29, 1996, is clearly wrong in light of the reliable, probative and substantial evidence on the whole record and was arbitrary, capricious and characterized by an abuse of discretion and was clearly an unwarranted exercise of discretion.

Based on this decision, the Board informed Monk in writing that she must submit documentation of specialized training. Following an evaluation of the criteria, Monk received a letter which stated "the Board of Education did approve the Superintendent's recommendation to transfer Mr. Dalton to the teaching position at PikeView High School."

Monk now contends the circuit court exceeded its jurisdiction and lawful authority as this case involves a collateral attack on a grievance decision by a party who is using the grievance process as a vehicle to arrive at circuit court in order to challenge a previous grievance board decision. She contends the court's decision permits Dalton to circumvent W.Va.Code § 18–29–7 by pursuing a grievance which is not based on a dispute with the employer, but is instead based on a prior grievance board decision.

Dalton argues that the overriding concern when filling a vacant teaching position should be qualifications. He contends there is no statutory authority for choosing professional teachers by lottery; therefore, the ALJ erred in directing that teachers be chosen by lottery. As a result, the circuit court was correct in reversing the ALJ's decision and directing that the position be awarded to the most qualified candidate.

■ The issue, as we see it, is whether the circuit court erred in considering the merits of Dalton's grievance when Dalton did not intervene in Monk's grievance.

"Grievance" means any claim by one or more affected employees of the governing boards of higher education, state board of education, county boards of education, regional educational service agencies and multi-county vocational centers alleging a violation, a misapplication or a misinterpretation of the statutes, policies, rules, regulations or written agreements under which such employees work, including any violation, misapplication or misinterpretation regarding compensation, hours, terms and conditions of employment, employment status or discrimination; any discriminatory or otherwise aggrieved application of unwritten policies or practices of the board; any specifically identified incident of harassment or favoritism; or any action, policy or practice constituting a substantial detriment to or interference with effective classroom instruction, job performance or the health and safety of students or employees.

W.Va.Code § 18–29–2(a) (1992). When there has been a misinterpretation or misapplica-

ceipt of the hearing examiner's decision. The decision of the hearing examiner shall not be stayed, automatically, upon the filing of an appeal, but a stay may be granted by the circuit court upon separate motion therefor.

The court's ruling shall be upon the entire record made before the hearing examiner, and the court may hear oral arguments and require written briefs. The court may reverse, vacate or modify the decision of the hearing examiner or may remand the grievance to the chief administrator of the institution for further proceedings.

tion of a statute involving school personnel, the employee affected by the misinterpretation or misapplication of the law has no duty to file a grievance until the misinterpretation or misapplication occurs. Dalton could not have known prior to the ALJ's decision being rendered that the ALJ would misapply the law and order the Board to fill the vacant position by lottery. Therefore, Dalton had no duty to file a grievance prior to that decision being announced.

■ We also believe Dalton had no reason to intervene in Monk's grievance because he did not know until her grievance was finally decided that his job would be adversely affected. W.Va.Code 18–29–3(u) allows for intervention if one thinks the disposition of a case will adversely affect his or her rights or if one thinks the existing parties will not adequately represent his or her interest. Dalton had no duty or obligation to intervene until a decision adversely affected his job, that is, until after the Level IV decision had been rendered in Monk's grievance. At that point, Dalton could not appeal the outcome of Monk's grievance to the circuit court because he was not a party. Only the Board could appeal, and the Board chose not to exercise that right. Only then was Dalton removed from the teaching position. The option which was left to him was to file his own grievance, which he did.

■ The other issue we believe we must address is whether teachers with equal qualifications who apply for a vacant teaching position can be chosen to fill the vacant position by random selection. County boards of education are statutorily directed to make these decisions, and the selection process is controlled by W.Va.Code § 18A–4–7a.[5] The West Virginia Code does not give ALJs authority to order the random selection of professional teachers, and we cannot provide it. This selection of candidates puts boards of education in a position where they must use their discretion in rating the qualifications of the applicants. However, this is the kind of discretion we place in elected board members.

We note here that the law, as a matter of policy, does not disfavor random selection in a situation where it is proper to choose by lottery. Simply put, there is nothing inherently wrong in deciding certain issues by random selection. The Legislature has statutorily provided for the random selection of school service personnel. W.Va.Code § 18A–4–8b (1990) states in relevant part, "If two or more employees accumulate identical seniority, the priority shall be determined by a random selection system established by the employees and approved by the county board." This Court also recently recognized that W.Va.Code § 8–5–15 authorizes the breaking of a tie in a municipal election by lot. *In re Election Contest Between Moore and Powell,* 200 W.Va. 335, 489 S.E.2d 492 (1997).

However, no such random selection process is provided by the Legislature for filling vacant teaching positions. Therefore, absent a specific statutory authorization, county boards of education cannot fill vacant teaching positions by random selection or lottery when two or more equally qualified employees apply for the vacant position. W.Va. Code § 18A–4–7a provides the criteria the board of education must take into consideration when determining which candidate is the most qualified. The candidate who is most qualified must be chosen to fill the vacancy. In the case at bar, the Board determined Dalton was better qualified than Monk to fill the vacancy at PikeView High School. The selection process mandated by the West Virginia Code was utilized to fill the vacancy. For that reason, Dalton will remain in the teaching position.

For the foregoing reasons, the writ is denied.

Writ denied.

WORKMAN, Chief Justice, concurring, in part, and dissenting, in part:

I concur with the majority that the lower court was in part correct[1] but I find it deeply

---

5. *See supra* note 1 for the relevant language of this code section.

1. Judge Knight's decision held, "Where two employees are 'tied' in reference to the qualifications under the law for a position, the Board of

troubling that the majority opinion endorses collateral attacks of Grievance Board decisions. This is a significant departure from existing law and to this aspect of the majority opinion, I strenuously dissent.

Ms. Monk filed a grievance after the teaching position at issue was awarded to Mr. Dalton. Monk's grievance proceeded to Level IV where the hearing examiner found that the principal erred in relying on Dalton's specialized training because it was not included in the job posting. Next, the examiner found Monk and Dalton to be equally qualified, and he ordered a drawing to break the tie.[2] Monk was awarded the position after drawing a higher number than Dalton. A few days later, Dalton filed a grievance which read, "I am in total disagreement with Judge Jerry Wright's Level IV decision and with the November 3, 1995 "random employee" selection by the Mercer County Schools. I feel that I should remain in the teaching position that I was hired for at PikeView High School." Dalton's grievance was denied, and the hearing examiner held that "a grievant is not permitted to attack collaterally a prior Level IV decision involving the same teaching position and the same employees." The circuit court reversed the hearing examiner and considered the Monk and Dalton cases together despite the fact that neither party intervened in the other party's grievance. The circuit court neglected to address the collateral attack issue. The lower court held that the Board of Education could break ties between candidates for a position using its discretion. Thereafter, Dalton was awarded the position after the

Board considered each candidate's specialized training. Subsequently, Monk filed a petition for prohibition.

The administrative law judge ("ALJ") who dismissed Dalton's claim was absolutely correct in holding that collateral attacks are impermissible. Under West Virginia Code § 18–29–4(d)(2) (1994 & Supp.1997), ALJ decisions are final and binding upon the parties. The only remedy under the statute is that either party (to the grievance) may appeal to the circuit court on the grounds that the hearing examiner's decision was erroneous based upon any of the five enumerated grounds set forth in the statute. W.Va.Code § 18–29–7 (1994). In his decision, the ALJ cited a 1995 administrative decision which interpreted § 18–29–7 (1994). In *Clay v. Mingo County Board of Education*, Docket No. 95–29–208 (Aug. 30, 1995), the ALJ held that the statute provides no authority for an administrative law judge to interpret, clarify, or otherwise amend the decision of another administrative law judge at Level IV. Clearly, collateral attack of a Grievance Board decision is not allowed under the statute.[3]

Because the record is silent with respect to when Mr. Dalton learned of Ms. Monk's grievance, the majority may well be correct in concluding that Mr. Dalton had no other remedy for losing the teaching position except to file a grievance. Even so, however, the employer's action would have more properly been the subject of the second grievance, *not* the decision of another administrative law judge.[4]

---

Education should be allowed to choose the candidate of their choice; the Board should first make a decision of whether or not they wish to do this. Then and only then should some random choice procedure be used to decide who obtains the job and that procedure should be established by the employees and approved by the county, which was not done in this case."

2. The record is silent with regard to when Dalton first learned of the Monk grievance. Thus, this is the first time we know Dalton had knowledge of the grievance.

3. *See State v. Miller*, 194 W.Va. 3, 459 S.E.2d 114 (1995) (stating that "[t]he doctrines of res judicata and collateral estoppel were well developed in the context of judicial proceedings, but may be applied to administrative actions as well"); Syl.

Pt. 2, *Vest v. Board of Educ.*, 193 W.Va. 222, 455 S.E.2d 781 (1995) (establishing guidelines to be utilized in determining whether administrative decision falls within parameters of either res judicata or collateral estoppel).

4. Even where a second grievance on the same issue is properly filed, there is still potential for conflicting administrative decisions. The legislature provided a means for intervention by any employee who claims that the disposition of a grievance may substantially and adversely affect his or her rights where the existing parties do not adequately represent his or her rights. W.Va. Code § 18–29–3(u) (1994). Thus, under this statute, an employee who has notice of an ongoing grievance may intervene to protect his or her rights. There is, however, no requirement that

Because we do not have the complete record before us, it cannot be determined whether Dalton had any actual or constructive notice of Monk's grievance prior to the Level IV decision. By enacting the permissive intervention statute without any notice requirements, the legislature has created somewhat of a no man's land. Thus, the legislature should revisit this statute to consider requiring mandatory intervention and a requirement for notice to other employees who would be affected by a grievance decision. In the meantime, let us hope the majority opinion does not create confusion on the right to collaterally attack educational grievance decisions.

one in such a situation receive notice of the grievance, nor any mandatory duty to intervene.