512 S.E.2d 597

**MINGO COUNTY BOARD OF EDU-CATION, Respondent below/Petitioner below, Jada Hunter, Intervenor below, Appellees,**

v.

**Frank JONES, Grievant below/Respondent below, Appellant.**

No. 24968.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 16, 1998.

Decided Dec. 15, 1998.

---

Harry M. Rubenstein, Esq., Kay, Casto, Chaney, Love & Wise, Morgantown, West Virginia, Attorney for Appellee Mingo County Board of Education.

Jane Moran, Esq., Williamson, West Virginia, Attorney for Appellee Jada Hunter.

Bradley J. Pyles, Esq., Crandall, Pyles & Haviland, Logan, West Virginia, Attorney for Appellant Frank Jones.

STARCHER, Justice:

Frank Jones ("Jones") appeals a June 30, 1997, order of the Circuit Court of Mingo County that reversed an administrative law judge's decision granting Jones' grievance against the Mingo County Board of Education ("Board"). Jones contends that the circuit court erred in reversing the administrative law judge and in sustaining the Board's awarding the position of principal of Matewan High School to Jada Hunter ("Hunter"). After reviewing the record and briefs, we agree with Jones and reverse the circuit court's decision.

## I.

### Factual Background

The facts in this matter are essentially uncontroverted. On November 22, 1995, the Board posted notice of a vacancy in a principal's position at Matewan High School. This notice was posted pursuant to *W.Va.Code,* 18A–4–7a [1993].[1] The notice stated that the deadline for applications was November 30, 1995. Jones was the only person who submitted an application during the specified time period.

Following the submission of Jones' application, a selection committee consisting of teachers, parents and service personnel reviewed Jones' application and interviewed him. The committee reported to the superintendent of schools that Jones met the basic qualifications for the job. However, the committee requested that the position neverthe-

---

1. *W.Va.Code,* 18A–4–7a [1993] states, in part:

    Boards shall be required to post and date notices of all openings in established, existing or newly created positions in conspicuous working places for all professional personnel to observe for at least five working days. The notice shall be posted within twenty working days of such position openings and shall include the job description. Any special criteria or skills that are required by the position shall be specifically stated in the job description and directly related to the performance of the job. No vacancy shall be filled until after the five-day minimum posting period. If one or more applicants meets the qualifications listed in the job posting, the successful applicant to fill the vacancy shall be selected by the board within thirty working days of the end of the posting period[.]

less be re-posted, to enable the committee to evaluate other applicants for the job.

The superintendent complied with this request and re-posted the position on December 8, 1995. This second posting was identical to the first, except it set the cut-off date for submitting applications as December 14, 1995. Hunter was the only person to submit an application pursuant to the second posting. The selection committee reviewed Hunter's qualifications and interviewed her.

The selection committee subsequently reported to the superintendent that both Jones and Hunter were qualified, and that either applicant would be a benefit to the school. The superintendent eventually recommended to the Board that Hunter fill the position. This recommendation was stated to be based on the superintendent's knowledge of the backgrounds of the two applicants.

Jones filed a grievance, and on May 30, 1996, the West Virginia Education and State Employees Grievance Board granted the grievance, ordering the Board to place Jones in the position of principal at Matewan High School.

The Board appealed the decision of the Grievance Board to the Circuit Court of Mingo County, and Hunter intervened in the appeal. Subsequently, the circuit court reversed the decision of the Grievance Board. Jones appealed the circuit court's order to this Court.

## II.

### Standard of Review

■ All parties agree that the issue in this matter is one of statutory interpretation and as such is subject to our *de novo* review. *Martin v. Randolph County Board of Education,* 195 W.Va. 297, 304, 465 S.E.2d 399, 406 (1995).

## III.

### Decision

■ Jones contends that the circuit court erred in reversing the holding of the administrative law judge of the West Virginia Education and State Employees Grievance Board, and in holding that *W.Va.Code,* 18A–4–7a [1993] permits multiple postings of a job vacancy, as long as the vacancy is filled within the 30–day time limit in which the vacancy must be filled.[2] Jones argues that because he was the only applicant under the original posting, and because he met the requirements for the position, the statute imposed a duty on the Board to appoint him to the position.

The Board and Hunter argue that school boards are granted broad discretion in personnel matters and should be permitted the opportunity to have multiple postings of job vacancies, so long as a vacancy is filled 30 days after the first posting.

■ We agree that school boards are afforded discretion in personnel matters.

County boards of education have substantial discretion in matters relating to the hiring, assignment, transfer, and promotion of school personnel. Nevertheless, this discretion must be exercised reasonably, in the best interests of the schools, and in a manner which is not arbitrary and capricious.

Syllabus Point 3, *Dillon v. Board of Education of Wyoming County,* 177 W.Va. 145, 351 S.E.2d 58 (1986).

■ But while school boards are granted this discretion, they must comply with procedures prescribed in the relevant statutes—in this instant case, *W.Va.Code,* 18A–4–7a [1993].

We have stated:

Effect should be given to the spirit, purpose and intent of the lawmakers without limiting the interpretation in such a manner as to defeat the underlying purpose of the statute. Each word of a statute should be given some effect and a statute must be construed in accordance with the import of its language. Undefined words and terms used in a legislative enactment will be given their common, ordinary and accepted meaning.

---

**2.** *See* note 1, *supra.*

Syllabus Point 6, in part, *State ex rel. Cohen v. Manchin*, 175 W.Va. 525, 336 S.E.2d 171 (1984).

*W.Va.Code*, 18A–4–7a [1993][3] provides that "[i]f one or more applicants meets the qualifications listed in *the* job posting, the successful applicant ... *shall* be selected by the board ...." (Emphasis added.) In its use of the words "*the* posting," the statute does not address multiple postings. We must assume that the Legislature recognized that there would be situations where there would be only one qualified applicant. In such a case, the statute uses the word "shall" to mandate that the position be filled by the qualified applicant.

The Board and Hunter point out that the statute also mandates that the vacant position be filled within 30 days of the posting, but only requires a minimum posting of 5 days. Appellees argue that so long as these restrictions are adhered to, school boards should be permitted to post and re-post the position as many times as they believe to be necessary.

■ We agree that *W.Va.Code*, 18A–4–7a [1993] requires only a minimum posting period of 5 days, and that school boards are permitted to post vacancies for longer periods of time. However, "[c]ounty boards of education are bound by procedures they properly establish to conduct their affairs." Syllabus Point 3, *Dillon v. Board of Education of Wyoming County*, 177 W.Va. 145, 351 S.E.2d 58 (1986).

In this case, the original posting specifically stated that the deadline for applications would be November 30, 1994 at 4:00 p.m. Had the Board decided not to establish this deadline, but to set the application period for a longer amount of time to try to obtain a larger pool of candidates, the Board would have been acting within the power granted to them in the statutes. However, once the

Board established the November 30, 1995 deadline, it was bound to adhere to the deadline, and to hire the single qualified applicant who had filed during that application period.

■ When a school board posts a notice of vacancy pursuant to *W.Va.Code*, 18A–4–7a [1993], and one or more qualified applicants apply for the position within the posting period, the school board must select a qualified applicant from those who applied during the posting period.

### IV.

#### *Conclusion*

Accordingly, the order of the Circuit Court of Mingo County is reversed, and the instant case is remanded with directions to enter an order directing the Mingo County Board of Education to place Jones in the position of Principal of Matewan High School, and to compensate him for any loss of wages or benefits he may have accrued, less any appropriate set-off.

Reversed and Remanded.

Chief Justice DAVIS, Justice McCUSKEY, and Judge PANCAKE, sitting by special assignment, joined in the Opinion of the Court.

Justice MAYNARD, deeming himself disqualified, did not participate in the decision of this case.

Justice McGRAW did not participate in the decision of this case.

WORKMAN, Justice, dissenting.

The Mingo County Superintendent of Schools, Mr. Everett Conn, and the Mingo County Board of Education chose the applicant they deemed best qualified to serve as the principal of Matewan High School. The Board violated no statute, and it had good and sound reasons for its decision.[1] Yet the

---

**3.** *See note 1, supra.*

**1.** The administrative law judge, awarding the position to Mr. Jones, noted that "Superintendent Conn determined that Ms. Hunter was the most qualified applicant and the Board accepted his recommendation that she be awarded the job. Mr. Conn's decision was predicated on his personal knowledge of the backgrounds of the two applicants; his determination that Ms. Hunter had 'earned' her administrative certificate via completion of a Master's Degree program in Education Administration and the grievant had obtained his certificate through a regulation of the West Virginia Department of Education (DOE) which did not require an Administration degree...." In a footnote, the administrative law

majority now removes this principal from her job and requires the Mingo County Board of Education to pay years of back wages. Thus, I must vociferously dissent.

West Virginia Code § 18A–4–7a neither explicitly authorizes nor explicitly precludes re-posting of job openings. The majority's interpretation of the statute is overreaching. The statute, as the legislature drafted it, simply requires a school board to post a notice, wait at least five days, and then fill the vacancy within thirty days after the end of the posting period. The statute does not specify a maximum posting period, nor does it specify the number of times a notice may be posted within the posting period chosen by the school board.

The majority, in applying the statutory language, imposes terms upon school boards not dictated by the legislature. The majority, in essence, fills in a perceived gap in the legislative edict. The majority seizes upon the language, "If one or more applicants meets the qualifications listed in the job posting, the successful applicant to fill the vacancy shall be selected by the board..." and concludes that only one posting is statutorily permitted. I agree that the language is not conclusive and therefore requires interpretation. Yet, the augmentation conducted by the majority runs afoul of our accepted means of construing legislative proclamations. As we explained in syllabus point seven of *Ewing v. Board of Education of County of Summers*, 202 W.Va. 228, 503 S.E.2d 541 (1998),

> " " " 'A statute should be so read and applied as to make it accord with the spirit, purposes and objects of the general system of law of which it is intended to form a part; it being presumed that the legislators who drafted and passed it were familiar with all existing law, applicable to the subject matter, whether constitutional, statutory or common, and intended the statute to harmonize completely with the same and aid in the effectuation of the general purpose and design thereof, if it

terms are consistent therewith.' Syllabus Point 5, *State v. Snyder*, 64 W.Va. 659, 63 S.E. 385 (1908)." Syl. Pt. 1, *State ex rel. Simpkins v. Harvey*, [172] W. Va. [312], 305 S.E.2d 268 (1983).' Syl. Pt. 3, *Shell v. Bechtold*, 175 W.Va. 792, 338 S.E.2d 393 (1985) [ (per curiam) ]." Syllabus point 1, *State v. White*, 188 W.Va. 534, 425 S.E.2d 210 (1992).

The "spirit, purposes and objects of the general system of law of which [the statute] is intended to form a part" encompasses much broader considerations than acknowledged by the majority. In attempting to implement other mandates of this statute in *Ewing*, this Court explained the purposes of the statute and the delicate balance between the discretion of the county school boards and the necessity for interpretation of statutory language through judicial avenues. We stated:

> To more effectively understand the import of W. Va.Code § 18A–4–7a, it is necessary to examine the policies underlying the law of educational employment decisions. This State has firmly resolved to provide our schoolchildren with the best possible educational opportunities. Specifically, the West Virginia Constitution mandates that "[t]he legislature shall provide, by general law, for a thorough and efficient system of free schools." W. Va. Const. art. XII, § 1. This Court likewise has recognized that
>
> [p]ublic education is a fundamental constitutional right in this State, and a prime function of the State government is to develop a high quality educational system, an integral part of which is qualified instructional personnel.... "[T]he State has a legitimate interest in the quality, integrity and efficiency of its public schools in furtherance of which it is not only the responsibility but also the duty of school administrators to screen those [in] ... the teaching profession to see that they meet this standard." *James v. West Virginia Board of Re-*

judge explained that the "grievant's administrative licensure was referred to by the parties as a 'Taco Bell' certificate. Notice is taken that the certificate was so designated because manage-

ment of a fast food restaurant would meet the minimal supervisory experience requirement under the applicable DOE regulation."

*gents,* 322 F.Supp. 217, 229 (S.D.W.Va.), *aff'd,* 448 F.2d 785 (4th Cir.1971) [ (per curiam) ]. The county boards of education perform these functions on behalf of the State in the hiring and placement of teachers.

*Dillon v. Board of Educ. of County of Wyoming,* 177 W.Va. at 148, 351 S.E.2d at 61 (additional citations omitted).

In order to ensure the highest possible quality of education in West Virginia, those charged with hiring our State's educators, county boards of education, are allowed broad discretion in employing the most qualified individuals to teach our young people. "County boards of education have substantial discretion in matters relating to the hiring, assignment, transfer, and promotion of school personnel." Syl. pt. 3, in part, *Dillon,* 177 W.Va. 145, 351 S.E.2d 58. Accord Syl. pt. 2, *Cowen v. Harrison County Bd. of Educ.,* 195 W.Va. 377, 465 S.E.2d 648 (1995). *See also State ex rel. Monk v. Knight,* 201 W.Va. 535, 539, 499 S.E.2d 35, 39 (1997) ("County boards of education are statutorily directed to make ... [educational employment] decisions.... This selection of candidates puts boards of education in a position where they must use their discretion in rating the qualifications of the applicants." (footnote omitted)); *Mason County Bd. of Educ. v. State Superintendent of Sch.,* 160 W.Va. at 351, 234 S.E.2d at 323 ("We recognize that considerable authority is vested in a county board of education to operate its public schools." (citation omitted)).

For this reason, while "[t]his Court has a duty to oversee that the objective of filling this State's schools with 'qualified instructional personnel' is met," *State ex rel. Melchiori v. Board of Educ., of County of Marshall,* 188 W.Va. at 581, 425 S.E.2d at 257 (citation omitted), **the judiciary is nonetheless reluctant to find fault with such hiring decisions unless the scheme employed clearly does not comport with the statutory guidelines for such decisions or is, in other respects, inappropriate.**

202 W.Va. at 242, 503 S.E.2d at 555 (emphasis supplied).

Having so thoroughly acknowledged the critical role of the local school boards in employment decisions, it is alarming that the majority would now retreat from that position by imposing a limitation upon the school boards not explicitly dictated by the legislature. While I share the majority's dedication to the premise that the broad discretion granted to the school boards must certainly yield to clear legislative mandates, where the legislature did not speak to a particular issue, the discretionary determinations of the school boards must respected.

In *Keatley v. Mercer County Board of Education,* 200 W.Va. 487, 490 S.E.2d 306 (1997), we encountered a similar absence of precise legislative guidance, and we observed as follows:

The provision cited from W.Va.Code § 18A–4–7a does not establish the deadline by which an applicant must possess the appropriate certification. The absence of such a reference clearly indicates legislative intent for county boards of education to exercise discretion on this issue. "[I]f the statute is silent ... with respect to the specific issue, the question for the court is whether the [Board's] answer is based on a permissible construction of the statute." *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 843, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694, 703 (1984). See *Pauley v. BethEnergy Mines, Inc.,* 501 U.S. 680, 696–98, 111 S.Ct. 2524, 2534, 115 L.Ed.2d 604, 623–25 (1991). Therefore, we review the Board's decision, only to determine if the Board's statutory construction is one the legislature would have sanctioned. See *United States v. Shimer,* 367 U.S. 374, 383, 81 S.Ct. 1554, 1560–61, 6 L.Ed.2d 908, 915 (1961).

200 W.Va. at 491–92, 490 S.E.2d at 310–11 (footnote omitted).

The selection committee in this matter interviewed Mr. Jones and reported to the Superintendent of Schools as follows:

We feel that Matewan High School is on its way toward being a school of excellence. We are a school with high expectations and our morale is very high.

Since we are on our way to becoming a school of excellence, the Matewan High School interview committee would like to suggest that the job of principal be reposted.

There was only one qualified applicant that was interviewed. We recommend that we be able to interview additional qualified applicants. We can then consider the one applicant we have interviewed plus any other applicants. This way we can make a more professional recommendation on who best meets the need of our school.

While the committee did not identify any precise reservation concerning Mr. Jones, it is obvious that they had some reservation. This is precisely the type of situation where local school boards should have as much freedom as the statute permits in selecting the best applicant. Despite the fact that statutes must be complied with, we must not forget that the educational system is designed to serve the best interests of the students in the individual communities, as administered through the local school boards.

I also differ with the majority on the issue of retroactive compensation. In *State ex rel.*

*Serdich v. Preston County Board of Education,* 200 W.Va. 34, 488 S.E.2d 34 (1997), we explained that back pay is not appropriate where the statute underlying the decision was not clear, as follows:

> The Court notes that what constitutes an "opening" within the statutory language was unclear at the time the circuit court rendered its ruling in this case, as well as at the time the board of education failed to send the appropriate notice to the appellant. Under such circumstances the Court believes that it would be inappropriate to award the appellant back pay, other benefits, and other legal expenses connected with the bringing of this action.

200 W.Va. at 38, 488 S.E.2d at 38.

Based upon the foregoing, I respectfully dissent.