503 S.E.2d 541

Linda EWING, Petitioner
Below, Appellee,

v.

THE BOARD OF EDUCATION OF THE
COUNTY OF SUMMERS and Charles
R. Rodes, Superintendent/Secretary, Re-
spondents Below, Appellants.

No. 24902.

Supreme Court of Appeals of
West Virginia.

Submitted June 3, 1998.

Decided June 12, 1998.

Kathryn Reed Bayless, Bayless & McFadden, Princeton, for Appellants.

George A. Mills, III, Huntington, for Appellee.

William B. McGinley, Charleston, for Amicus Curiae, The West Virginia Education Association.

DAVIS, Chief Justice:

The respondents below and appellants herein, the Summers County Board of Education and Charles R. Rodes, Superintendent of Summers County Schools and Secretary of the Summers County Board of Education

[hereinafter collectively referred to as "the Board"], appeal from an order entered August 22, 1997, by the Circuit Court of Summers County. In this decision, the circuit court denied the Board's motion to dismiss the petition for writ of mandamus filed by the petitioner below and appellee herein, Linda Ewing. The circuit court additionally granted Ms. Ewing mandamus relief and ordered the Summers County Board of Education to vacate its challenged hiring decision and to select one of two permanently employed applicants to fill a vacant teaching position. Upon a review of the parties' arguments, the record in this case, and the pertinent authorities, we vacate the writ of mandamus awarded by the Circuit Court of Summers County and reverse the circuit court's denial of the Board's motion to dismiss Ms. Ewing's petition for writ of mandamus.

I.

## FACTUAL AND PROCEDURAL HISTORY

The facts underlying the instant appeal are not disputed by the parties. On April 17, 1997, the Board posted a hiring notice for a business teacher at Summers County High School for grades nine through twelve,[1] upon the retirement of the individual employed in this position. Four persons applied for this job: Linda Ewing, the petitioner below and appellee herein; Sharon Romanello; Susan Lawrence; and Susie Hudson. In April, 1997, both Ms. Ewing and Ms. Romanello were permanently employed instructional personnel (teachers) in Summers County. The third applicant, Ms. Lawrence, previously had been a permanently employed teacher in Summers County; however, the Board terminated her employment in 1995 due to a

---

1. The "Notice of Teacher Vacancy" advertised a job opening for "1 Business Teacher grades 9–12 at Summers County High School," and required the following qualifications:

 I. Applicant must hold a valid WV Teaching Certificate in Business Education 7–12 or Business Principles 7–12

 II. Specialized training and/or experience required in the following:

(Verification of Specialized training and/or experience shall be provided by applicant with resume)
 a. Microsoft Windows
 b. Word Perfect 5.1 or 6.1
 c. Lotus 1–2–3
 d. Microsoft Works
 e. Accounting

reduction in force[2] and placed her on the preferred recall list. The final applicant, Ms. Hudson, was employed by the Board as a substitute teacher.

In evaluating the qualifications of the four applicants, the Board considered the second set of hiring criteria enumerated in W. Va. Code § 18A–4–7a (1993) (Repl.Vol.1997):

> If one or more permanently employed instructional personnel apply for a classroom teaching position and meet the standards set forth in the job posting, the county board of education shall make decisions affecting the filling of such positions on the basis of the following criteria: Appropriate certification and/or licensure; total amount of teaching experience; the existence of teaching experience in the required certification area; degree level in the required certification area; specialized training directly related to the performance of the job as stated in the job description; receiving an overall rating of satisfactory in evaluations over the previous two years; and seniority. Consideration shall be given to each criterion with each criterion being given equal weight. If the applicant with the most seniority is not selected for the position, upon the request of the applicant a written statement of reasons shall be given to the applicant with suggestions for improving the applicant's qualifications.

**2.** A "reduction in force" occurs "[w]henever a county board is required to reduce the number of professional personnel in its employment, [and] the employee with the least amount of seniority [is] properly notified and released from employment pursuant to the provisions of section two [§ 18A–2–2], article two of this chapter[.]" W. Va.Code § 18A–4–7a (1993) (Repl.Vol.1997). W. Va.Code § 18A–2–2 (1990) (Repl.Vol.1997) further provides that

> a continuing contract shall not operate to prevent a teacher's dismissal based upon the lack of need for the teacher's services pursuant to the provisions of law relating to the allocation to teachers and pupil-teacher ratios. But in case of such dismissal, the teachers so dismissed shall be placed upon a preferred list in the order of their length of service with that board, and no teacher shall be employed by the board until each qualified teacher upon the preferred list, in order, shall have been offered the opportunity for reemployment in a position for which they [sic] are [sic] qualified[.]

Based upon these guidelines, the Board ranked Ms. Lawrence first, awarding her five points, followed by Ms. Ewing and Ms. Romanello, awarding both Ms. Ewing and Ms. Romanello four points each. Accordingly, the Superintendent recommended hiring Ms. Lawrence for the business teacher position, and the Board unanimously approved her employment during its May 1, 1997, meeting.

On May 14, 1997, Ms. Ewing filed a grievance complaining of the Board's failure to hire her for the business teacher position. In accordance with grievance procedures, a Level II grievance hearing was scheduled for June 2, 1997, but Ms. Ewing requested that it be continued. Ms. Ewing subsequently retained legal counsel. On June 17, 1997, Ms. Ewing, by counsel, filed a petition for writ of mandamus, as permitted by W. Va. Code § 18A–4–7a,[3] in the Circuit Court of Summers County, wherein she requested the rescission of Ms. Lawrence's hiring and the award of the business teacher position.

In its August 22, 1997, order, the circuit court first denied the Board's motion to dismiss, on procedural grounds, Ms. Ewing's petition for writ of mandamus. The court determined that Ms. Ewing's failure to exhaust her administrative remedies by pursuing relief through her previously initiated grievance proceedings did not preclude her right to petition the court for a writ of mandamus. Explaining its reasoning, the circuit court noted that it

Further guidelines for the hiring of teachers who are on a preferred recall list as a result of a reduction in force are contained in W. Va.Code § 18A–4–7a, which is discussed in note 4, *infra*.

**3.** W. Va.Code § 18A–4–7a (1993) (Repl.Vol.1997) states, in part:

> [a]ny board failing to comply with the provisions of this article may be compelled to do so by mandamus and shall be liable to any party prevailing against the board for court costs and reasonable attorney fees as determined and established by the court. Further, employees denied promotion or employment in violation of this section shall be awarded the job, pay and any applicable benefits retroactive to the date of the violation and payable entirely from local funds. Further, the board shall be liable to any party prevailing against the board for any court reporter costs including copies of transcripts.

may have granted this motion ... had it been raised prior to the [mandamus] hearing. Since it was raised only at the time of the hearing, both parties were present with their evidence and prepared to go forward, the case calls for a rapid resolution, in order to avoid disrupting school, and the state statutes seem to allow the Petitioner [Ewing] the option to either pursue a grievance, or a mandamus, the motion is denied.

The court then addressed the primary contention raised by Ms. Ewing: whether the Board improperly awarded the business teacher position to an individual who was on the preferred recall list and who was not then permanently employed by the Board, when two other qualified applicants were permanent Board employees. Construing the statutory language of W. Va.Code § 18A–4–7a,[4] the circuit court determined that the Board had erroneously hired Ms. Lawrence for the business teacher position. In this regard, the court

[b]elieve[d] that a purpose behind this statute is to establish a means of hiring, in which certain preferences are established. These preferences are that all other things being equal, seniority controls, and that permanent employees are preferred over "riffed" employees.[5] Any other reading of the statute ignores part of the statute.

It would thus appear that the person ultimately selected, Susan Lawrence, should not have been given preference over the two full time, permanent employees who applied. The position should thus be vacated, and the Respondent should reconsider the matter and full [sic] the position in accordance with the second set of criteria, set forth in WVC [sic] 18–4–7[sic].

The court further denied Ms. Ewing's request that she be awarded the position, finding the more appropriate resolution to be a reevaluation of the two permanent employee applicants by the Board given the fact that Ms. Romanello was not a party to Ms. Ewing's mandamus proceeding.[6] From these rulings of the circuit court, the Board appeals to this Court.

## II.

## DISCUSSION

On appeal to this Court, the Board raises three assignments of error: (1) the circuit court incorrectly found that Ms. Ewing was entitled to a writ of mandamus; (2) the circuit court improperly denied the Board's motion to dismiss by determining that once an

---

**4.** The court, in construing the language of W. Va.Code § 18A–4–7a, considered both the hiring criteria applicable when "one or more permanently employed instructional personnel apply for a classroom teaching position," quoted *supra* text page 545, and the guidelines pertaining to persons on the preferred recall list: .

All professional personnel whose seniority with the county board is insufficient to allow their retention by the county board during a reduction in work force shall be placed upon a preferred recall list. As to any professional position opening within the area where they [sic] had previously been employed or to any lateral area for which they [sic] have [sic] certification and/or licensure, such employee shall be recalled on the basis of seniority if no regular, full-time professional personnel, or those returning from leaves of absence with greater seniority, are qualified, apply for and accept such position. Before position openings that are known or expected to extend for twenty consecutive employment days or longer for professional personnel may be filled by the board, the board shall be required to notify all qualified professional personnel on the pre-

ferred list and give them an opportunity to apply, but failure to apply shall not cause such employee to forfeit any right to recall. The notice shall be sent by certified mail to the last known address of the employee, and it shall be the duty of each professional personnel to notify the board of continued availability annually of any change in address or of any change in certification and/or licensure.

W. Va.Code § 18A–4–7a (1993) (Repl.Vol. 1997).

**5.** The term "riffed employees" refers to those employees whose employment has been terminated due to a reduction in force. See *supra* note 2 for further discussion of this process.

**6.** The record indicates that, following the circuit court's award of mandamus, Ms. Romanello, who was the other permanent employee candidate, withdrew her application for the business teacher position at issue in this case. In addition, Ms. Ewing states that, after being awarded mandamus relief, she voluntarily withdrew her earlier filed grievance determining it to be duplicitous.

employee has initiated a grievance he/she is not required to exhaust the grievance procedure before he/she seeks extraordinary relief by mandamus pursuant to W. Va.Code § 18A–4–7a (1993) (Repl.Vol.1997) in the circuit court; and (3) the circuit court erred in interpreting the hiring guidelines of W. Va. Code § 18A–4–7a (1993) (Repl.Vol.1997) as requiring the preferential hiring of a permanent employee over a former employee on the preferred recall list. Following a brief discussion of the applicable standard of review, we will address the merits of the parties' contentions.[7]

### A. Standard of Review

■ The instant appeal comes to this Court by way of a ruling by the circuit court granting Ms. Ewing a writ of mandamus against the Board. When determining the propriety of a lower court's decision to grant the extraordinary remedy of mandamus, " [t]he standard of appellate review of a circuit court's order granting relief through the extraordinary writ of mandamus is de novo.' Syllabus Point 1, Staten v. Dean, 195 W.Va. 57, 464 S.E.2d 576 (1995)." Syl. pt. 1, O'Daniels v. City of Charleston, 200 W.Va. 711, 490 S.E.2d 800 (1997). Accord Martin v. West Virginia Div. of Labor Contractor Licensing Bd., 199 W.Va. 613, 616, 486 S.E.2d 782, 785 (1997); Phillip Leon M. v. Greenbrier County Bd. of Educ., 199 W.Va. 400, 404, 484 S.E.2d 909, 913 (1996); State ex rel. Cooper v. Caperton, 196 W.Va. 208, 214, 470 S.E.2d 162, 168 (1996). In this regard, "we consider de novo whether the legal prerequisites for mandamus relief are present." State ex rel. Cooper v. Caperton, 196 W.Va. at 214, 470 S.E.2d at 168 (citations omitted).

■ " 'A writ of mandamus will not issue unless three elements coexist—(1) a clear legal right in the petitioner to the relief sought; (2) a legal duty on the part of respondent to do the thing which the petitioner seeks to compel; and (3) the absence of another adequate remedy.' Syllabus Point 1, State ex rel. Billy Ray C. v. Skaff, 190 W.Va. 504, 438 S.E.2d 847 (1993); Syllabus Point 2,

State ex rel. Kucera v. City of Wheeling, 153 W.Va. 538, 170 S.E.2d 367 (1969)." Syl. pt. 2, Staten v. Dean, 195 W.Va. 57, 464 S.E.2d 576. Accord Syl. pt. 2, State ex rel. Sowards v. County Comm'n of Lincoln County, 196 W.Va. 739, 474 S.E.2d 919 (1996). In other words, when reviewing a petitioning party's entitlement to the remedy of mandamus, we examine whether " 'the party seeking the writ [has] show[n] a clear legal right thereto and a corresponding duty on the respondent to perform the act demanded.' Syllabus Point 1, [in part,] Dadisman v. Moore, 181 W.Va. 779, 384 S.E.2d 816 (1989); Syllabus Point 2, [in part,] State ex rel. Cooke v. Jarrell, 154 W.Va. 542, 177 S.E.2d 214 (1970)." Syl. pt. 3, in part, Staten v. Dean, 195 W.Va. 57, 464 S.E.2d 576. Furthermore, when ascertaining the duty of a respondent board of education to perform a specific act, "[m]andamus will lie to control a board of education in the exercise of its discretion [only] upon a showing of caprice, passion, partiality, fraud, arbitrary conduct, some ulterior motive, or misapprehension of the law." Syl. pt. 4, Dillon v. Board of Educ. of County of Wyoming, 177 W.Va. 145, 351 S.E.2d 58 (1986). Accord State ex rel. Board of Educ. of County of Kanawha v. Casey, 176 W.Va. 733, 736, 349 S.E.2d 436, 439 (1986).

■ In addition to questioning the propriety of the mandamus relief granted by the circuit court, the Board has raised issues regarding the correctness of the circuit court's interpretation of statutory law and challenging the circuit court's denial of the Board's motion to dismiss. The law in this State is well-settled that appellate review of a circuit court's conclusions of law is de novo. Syl. pt. 1, in part, State ex rel. Cooper v. Caperton, 196 W.Va. 208, 470 S.E.2d 162. Stated otherwise, " '[w]here the issue on an appeal from the circuit court is clearly a question of law or involving the interpretation of a statute, we apply a de novo standard of review.' Syllabus point 1, Chrystal R.M. v. Charlie A.L., 194 W.Va. 138, 459 S.E.2d 415 (1995)." Syl. pt. 1, University of West Virginia Board of Trustees on Behalf of

---

7. The West Virginia Education Association [hereinafter WVEA], an employee organization for educational personnel in this State, has filed a brief

as Amicus Curiae in this case. For further discussion of the WVEA's contentions, see infra note 20.

*West Virginia University v. Fox,* 197 W.Va. 91, 475 S.E.2d 91 (1996).

■ Less certain, however, is the precise standard of review of a circuit court's denial of a party's motion to dismiss. Generally, a motion to dismiss should be granted only where " 'it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.' " *Murphy v. Smallridge,* 196 W.Va. 35, 36, 468 S.E.2d 167, 168 (1996) (quoting *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59, 65 (1984)) (additional citation omitted). For this reason, motions to dismiss are viewed with disfavor, and we counsel lower courts to rarely grant such motions. *John W. Lodge Distrib. Co., Inc. v. Texaco, Inc.,* 161 W.Va. 603, 605-06, 245 S.E.2d 157, 159 (1978). Once a court has granted a motion to dismiss, though, we employ a *de novo* standard of review. *See, e.g.,* Syl. pt. 1, *Lipscomb v. Tucker County Comm'n,* 197 W.Va. 84, 475 S.E.2d 84 (1996) ("Appellate review of a circuit court's order granting a motion to dismiss an appeal from a decision of a county commission is *de novo*."); Syl. pt. 2, *State ex rel. McGraw v. Scott Runyan Pontiac–Buick, Inc.,* 194 W.Va. 770, 461 S.E.2d 516 (1995) ("Appellate review of a circuit court's order granting a motion to dismiss a complaint is *de novo*.").

■ While the standards pertaining to a review of a circuit court's decision to *grant* a motion to dismiss are well-defined, the standard of review of a circuit court's *denial* of a motion to dismiss is less definite. The infrequency· with which this Court is presented with such challenges is no doubt attributable, to some degree, to our pronouncements that ordinarily the denial of a motion to dismiss is an interlocutory order and, therefore, is not immediately appealable. *See, e.g.,* Syl. pt. 2, *State ex rel. Arrow Concrete Co. v. Hill,* 194 W.Va. 239, 460 S.E.2d 54 (1995) ("Ordinarily the denial of a motion for failure to state a claim upon which relief can be granted made pursuant to *West Virginia Rules of Civil Procedure* 12(b)(6) is interlocutory and is, therefore, not immediately appealable."). *See also Hutchison v. City of Huntington,* 198 W.Va. 139, 147, 479 S.E.2d 649, 657 (1996) (indicating that this Court rarely addresses a circuit court's denial of a motion to

dismiss since such an order is interlocutory). Nevertheless, there do arise cases in which the presentation for appellate review of a circuit court's decision to deny a motion to dismiss is appropriate because the issue is raised in the context of an appeal from a final judgment. Therefore, we hold that when a party, as part of an appeal from a final judgment, assigns as error a circuit court's denial of a motion to dismiss, the circuit court's disposition of the motion to dismiss will be reviewed *de novo.* Having set forth the applicable standards of review, we now examine the merits of the Board's assignments of error.

### B. Entitlement to Remedy of Mandamus

The Board first claims that the circuit court improperly concluded that Ms. Ewing was entitled to a writ of mandamus. In support of this contention, the Board states that boards of education are accorded discretion in making hiring decisions and that reviewing courts generally grant deference to such decisions where no showing of fraud, partiality, arbitrary or capricious conduct, or ulterior motive has been made. *Citing Tenney v. Board of Educ. of County of Barbour,* 183 W.Va. 632, 633, 398 S.E.2d 114, 115 (1990) (per curiam). Where, as here, the grieved employee has failed to show such fraud, partiality, or improper conduct or motive, the Board states that he/she is not entitled to the extraordinary remedy of mandamus. *Id.*

Furthermore, the Board indicates that Ms. Ewing has not demonstrated that she has a legal right to a writ of mandamus. The Board also contends that Ms. Ewing had other legal remedies available to her through the statutory grievance procedure, that she could have pursued and that would have provided her with the same relief that was awarded by the circuit court in the proceedings below.

In response, Ms. Ewing asserts that she was entitled to relief in mandamus because she had a clear legal right to such relief; the Board had a duty to fill vacant teaching positions according to the statutory guidelines, which prefer permanent employees over former employees on the preferred recall list; and no other adequate remedy existed to redress her harm.

When determining whether a writ of mandamus should issue, we require the coexistence of three distinct elements: "(1) a clear legal right in the petitioner to the relief sought; (2) a legal duty on the part of respondent to do the thing which the petitioner seeks to compel; and (3) the absence of another adequate remedy." Syl. pt. 2, in part, *Staten v. Dean,* 195 W.Va. 57, 464 S.E.2d 576 (internal quotation marks and citations omitted). While the last paragraph of W. Va.Code § 18A–4–7a (1993) (Repl.Vol. 1997) clearly gave Ms. Ewing the right to seek mandamus relief from adverse educational employment decisions,[8] as we will discuss further in Section II.C., below, such a right is not limitless. Rather, once an individual has chosen to pursue a grievance to obtain redress from an adverse employment decision, he/she must exhaust the grievance procedure before he/she may pursue mandamus relief pursuant to W. Va.Code § 18A–4–7a.[9] Because Ms. Ewing had already elected to seek relief from the adverse employment decision via the route of the educational employees' grievance procedure, she was prohibited from embarking upon the alternate course of a § 18A–4–7a mandamus remedy until she had completed her grievance journey.

Moreover, as will be noted in Section II.D., *infra,* the Board did not have a legal duty to do that which Ms. Ewing sought to compel, *i.e.,* to rescind its offer of employment to Ms. Lawrence and to award the business teacher position to Ms. Ewing. In other words, the Board, in applying the § 18A–4–7a statutory criteria to fill the vacant business teacher position, was not required to automatically extend a hiring preference to a permanent employee over a former employee or a non-employee. Thus, the Board had no duty to award Ms. Ewing the teaching job unless it determined that she had satisfied the statutory hiring criteria. As is evidenced by the controversy presently before us, the Board did not find Ms. Ewing to be the most qualified applicant for the job in question.

Finally, as noted above and discussed in Section II.C., below, Ms. Ewing had two alternative remedies she could have pursued to obtain relief from the Board's allegedly erroneous hiring decision: a § 18A–4–7a mandamus or an educational employees' grievance. Once she elected to seek a remedy through the grievance process, though, she was required to see that remedial course to its completion. She was not permitted to commence her grievance then, during the pendency of those proceedings, abandon her grievance and select the previously unchosen alternative route of § 18A–4–7a mandamus. Because she first initiated grievance proceedings, she had available to her an adequate remedy that was alternative to her statutory right to mandamus, and she was thereby precluded from seeking a writ of mandamus until the earlier grievance proceedings had been concluded.[10] Finding that Ms. Ewing has not established her entitlement to the extraordinary remedy of mandamus, we vacate the writ of mandamus awarded by the circuit court.

## C. Propriety of Maintenance of Mandamus Action Pursuant to W. Va.Code § 18A–4–7a During Pendency of Grievance Proceedings

The Board next contends that the circuit court erred in denying its motion to dismiss

---

8. For the pertinent portion of W. Va.Code § 18A–4–7a, see *supra* note 3.

9. Nonetheless, even during grievance proceedings, a grieved employee may file a petition for a writ of mandamus to cure a defect in the grievance procedure. *See* W. Va.Code § 18–29–9 (1985) (Repl.Vol.1994) ("Any institution failing to comply with the provisions of this article may be compelled to do so by mandamus proceeding and shall be liable to any party prevailing against the institution for court costs and attorney fees, as determined and established by the court.").

10. As discussed in note 6, *supra,* Ms. Ewing has represented to this Court that, following the circuit court's award of mandamus relief, she vol-

untarily withdrew her educational employees' grievance. W. Va.Code § 18–29–3(d) (1992) (Repl.Vol.1994) explains the effect of an employee's decision to withdraw his/her grievance:

> An employee may withdraw a grievance at any time by notice, in writing, to the level wherein the grievance is then current. Such grievance may not be reinstated by the grievant unless such reinstatement is granted by the grievance evaluator at the level where the grievance was withdrawn.... In the event a grievance is withdrawn ..., such employer shall notify in writing each lower administrative level.

based upon Ms. Ewing's failure to exhaust her previously initiated grievance remedies. Here, the Board suggests that because Ms. Ewing voluntarily and affirmatively commenced grievance proceedings prior to requesting mandamus relief pursuant to W. Va.Code § 18A–4–7a from the circuit court, she should be required to complete the grievance procedure before being permitted to proceed in mandamus. Moreover, the Board contends that the same relief granted to Ms. Ewing by way of mandamus could have been obtained through the statutory grievance procedure. Lastly, the Board maintains that Ms. Ewing has not shown that her continued pursuit of the grievance would have been futile.

Replying to the Board's argument, Ms. Ewing submits that the decision of the circuit court in this respect was proper in that she was not required to see to completion her previously initiated grievance before requesting § 18A–4–7a mandamus relief from the circuit court. She proposes that the statutory history of W. Va.Code § 18A–4–7a, which provides the mandamus relief at issue, demonstrates that the Legislature intended the remedy of mandamus to be available to individuals adversely affected by an educational employment decision. Ms. Ewing represents that the former version of this statute, W. Va.Code § 18A–4–8b (1988), specifically provided mandamus relief for the protection of an employee's seniority rights.[11] Although, as Ms. Ewing indicates, the remedy of mandamus was omitted when this provision was recodified in 1990 at W. Va.Code § 18A–4–7a (1990) (Spec.Supp. Nov. 1990), she states that the Legislature nevertheless reinserted the mandamus relief in its subsequent amendment of this section. *See* W. Va.Code § 18A–4–7a (1993) (Repl.Vol.1997).[12] Ms. Ewing thus claims that this statutory history evidences the Legislature's intent to provide a remedy in mandamus, alternative to an educational employee's grievance relief, whereby grieved persons could challenge educational employment decisions.

Furthermore, Ms. Ewing suggests that the law applicable to educational grievances, rather than requiring exhaustion of the grievance procedure as the Board contends, actually permits the concurrent maintenance of both grievance and § 18A–4–7a mandamus proceedings. While W. Va.Code § 29A–5–1 (1964) (Repl.Vol.1993) of the State Administrative Procedures Act has been interpreted as requiring a grieved individual to exhaust his/her administrative remedies before applying to a court for judicial relief, *see* Syl. pts. 2 and 3, *Bank of Wheeling v. Morris Plan Bank & Trust Co.*, 155 W.Va. 245, 183 S.E.2d 692 (1971), Ms. Ewing represents that neither county boards of education nor educational grievances are subject to the mandates of the Administrative Procedures Act. *Citing Mason County Bd. of Educ. v. State Superintendent of Sch.*, 160 W.Va. 348, 349, 234 S.E.2d 321, 322 (1977). Thus, Ms. Ewing maintains that she is not required to exhaust her previously initiated grievance before she is permitted to request § 18A–4–7a mandamus relief.

■ Although we have cautioned circuit courts to disfavor and rarely grant motions to dismiss, *see John W. Lodge Distrib. Co., Inc. v. Texaco, Inc.*, 161 W.Va. at 605–06, 245 S.E.2d at 159, there nevertheless arise cases in which dismissal is appropriate. The case *sub judice* is one such example. With respect to the remedies available to an individual who has been adversely affected by a board of education's hiring decision, there exist two options: (1) a petition for a writ of mandamus pursuant to W. Va.Code § 18A–4–7a and (2) the statutory grievance procedure contained in W. Va.Code §§ 18–29–1 to 18–29–11 (1992) (Repl.Vol.1994). In order to ascertain the appropriateness of Ms. Ewing's mandamus petition in light of her pending grievance proceedings, it is necessary for us

---

**11.** Former W. Va.Code § 18A–4–8b (1988) directed that " '[a]ny board failing to comply with the provisions of this article may be compelled to do so by mandamus.' " *Johnson v. Cassell*, 182 W.Va. 317, 320, 387 S.E.2d 553, 555 (1989) (per curiam). See *infra* note 22 for additional text from former W. Va.Code § 18A–4–8b.

**12.** The language of W. Va.Code § 18A–4–7a (1993) (Repl.Vol.1997) specifically provides that "[a]ny board failing to comply with the provisions of this article may be compelled to do so by mandamus...."

to review, in further detail, the nature and scope of these two remedies.

The first remedy available to Ms. Ewing is the mandamus relief permitted by W. Va. Code § 18A–4–7a.[13] In this section, the Legislature has given adversely affected employees a specific right to seek redress from an allegedly improper hiring decision by filing a petition for a writ of mandamus. Such a mandamus proceeding contemplates a decision, on the merits, as to the board's compliance with the applicable hiring guidelines and as to the relief owing to the aggrieved employee as a result of the erroneous employment decision. The second remedy available to an individual who perceives that he/she has been adversely affected by an educational employment decision is the statutory grievance process. As with the § 18A–4–7a mandamus relief, the grievance procedure also envisions a decision on the merits as to the propriety of the complained of employment decision.

■ Our inquiry does not end here, however, for when the construction of statutes is involved, it is the responsibility of this Court to construe statutes relating to the same subject matter consistently with one another.

Statutes relating to the same subject matter, whether enacted at the same time or at different times, and regardless of whether the later statute refers to the former statute, are to be read and applied together as a single statute the parts of which had been enacted at the same time.

Syl. pt. 1, *Owens–Illinois Glass Co. v. Battle*, 151 W.Va. 655, 154 S.E.2d 854 (1967). In this case, it initially appears that Ms. Ewing had an unconditional right to seek relief through mandamus pursuant to W. Va.Code § 18A–4–7a. However, this interpretation of the mandamus relief overlooks the limited role of mandamus in the context of pending grievance proceedings. *See* W. Va.Code § 18–29–9 (1985) (Repl.Vol.1994). Once an employee has initiated a grievance, he/she may seek relief via mandamus only for the limited purpose of curing procedural defects in the grievance process.[14] For example, if a

grievance evaluator fails to hold a hearing within a specified time, not only may a grieved employee seek relief by default, but he/she also has the option of curing this defect through mandamus. *See, e.g.,* Syl. pt. 3, *Hanlon v. Logan County Bd. of Educ.*, 201 W.Va. 305, 496 S.E.2d 447 (1997) (describing default relief); *Hattman v. Darnton*, 201 W.Va. 371, 374, 497 S.E.2d 348, 351 (1997) (per curiam) (discussing general mandamus relief). Thus, an employee may, during the course of a grievance proceeding, seek relief from procedural errors through mandamus, but he/she may not employ the extraordinary remedy of mandamus for any other purpose until the grievance has been finally resolved.

Were we to adopt the circuit court's ultimate finding that Ms. Ewing is allowed to file a petition for a writ of mandamus as permitted by W. Va.Code § 18A–4–7a and to request the continuance of her already pending grievance, we would emasculate the grievance procedure as it is presently structured. If an employee were permitted to abandon his/her grievance proceedings in midstream and to elect to continue his/her quest for relief by way of a § 18A–4–7a mandamus, the following scenario would likely result. An adversely affected employee files a grievance to challenge a hiring decision. He/she receives an unfavorable result at the Level I hearing before his/her immediate supervisor. Rather than proceeding with a Level II grievance hearing, he/she elects to pursue the mandamus relief provided by W. Va.Code § 18A–4–7a. A mandamus decision is rendered by the circuit court; the losing party appeals to this Court; we render a decision; and, conceivably, the grieved employee attempts to resume his/her grievance at Level II if we have remanded the matter to the grievance proceedings or if he/she is displeased with the ultimate resolution of the mandamus action. This scenario presumably could continue through each stage of the grievance procedure, permitting a party to request § 18A–4–7a mandamus relief at Level III of the grievance proceedings, and again at Level IV. Not only would such an interpretation foster a party's ability to

---

**13.** See *supra* note 3 for the statutory language providing § 18A–4–7a mandamus relief.

**14.** See *supra* note 9 for the text of W. Va.Code § 18–29–9.

"stall" the proceedings, but it would also severely impede the overriding public interest in promptly and efficiently resolving educational grievances, both to provide the grieved employee with a final resolution and to provide the schoolchildren of this State with the most qualified educational personnel. *See* W. Va.Code § 18–29–1 (1992) (Repl. Vol.1994) ("The purpose of this article is to provide a procedure for employees of the . . . county boards of education . . . and their employer or agents of the employer to reach solutions to problems which arise between them within the scope of their respective employment relationships to the end that good morale may be maintained, effective job performance may be enhanced and the citizens of the community may be better served. This procedure is intended to provide a simple, expeditious and fair process for resolving problems. . . ."). *See also Spahr v. Preston County Bd. of Educ.*, 182 W.Va. 726, 730, 391 S.E.2d 739, 743 (1990) ("We do not believe that the legislature intended the grievance process to be a procedural quagmire where the merits of the cases are forgotten.").

■ Therefore, based upon our need to construe statutes addressing the same subject matter consistently with one another, we hold that when an individual is adversely affected by an educational employment decision rendered pursuant to W. Va.Code § 18A–4–7a (1993) (Repl.Vol.1997), he/she may obtain relief from the adverse decision in one of two ways. First, he/she may request relief by mandamus as permitted by W.Va.Code § 18A–4–7a.[15] In the alternative, he/she may seek redress through the edu-

cational employees' grievance procedure described in W.Va.Code §§ 18–29–1 to 18–29–11 (1992) (Repl.Vol.1994). Once an employee chooses one of these courses of relief, though, he/she is constrained to follow that course to its finality. Stated otherwise, once an employee elects to seek relief from an adverse employment decision made in accordance with W. Va.Code § 18A–4–7a via the statutory educational employees' grievance procedure, he/she is precluded from seeking a writ of mandamus pursuant to W. Va.Code § 18A–4–7a, with respect to the same employment decision that is the subject of the previously initiated grievance, during the pendency of such grievance. Accordingly, we reverse the circuit court's denial of the Board's motion to dismiss Ms. Ewing's petition for writ of mandamus.[16]

### D. Interpretation of W. Va.Code § 18A–4–7a

The Board argues finally that the circuit court erroneously interpreted W. Va.Code § 18A–4–7a (1993) (Repl.Vol.1997) as requiring a county board of education to fill job vacancies based upon a hiring preference for permanent employees over former employees and nonemployees. In this regard, the Board proposes that the statutory language of § 18A–4–7a does not require the preferential hiring of permanent employees over nonemployees. Counsel suggests that § 18A–4–7a contains three sets of hiring guidelines. The first hiring factors, located at the beginning of the first paragraph [hereinafter "first criteria"],[17] do not apply to the instant case because no nonteacher professional personnel or new classroom teacher positions were

---

**15.** We caution that an individual's entitlement to elect the extraordinary remedy of mandamus provided by W.Va.Code § 18A–4–7a (1993) (Repl.Vol.1997) is available to redress only those injuries occasioned by educational employment decisions made in accordance with that statutory section. *See Kincell v. Superintendent of Marion County Sch.*, 201 W.Va. 640, 642 n. 4, 499 S.E.2d 862, 864 n. 4 (1997) (per curiam). Moreover, as noted above, an individual's entitlement to mandamus relief is conditioned upon his/her satisfaction of the three compulsory factors shaping this remedy. *See* Syl. pt. 2, *Staten v. Dean*, 195 W.Va. 57, 464 S.E.2d 576, set forth in Section II. A., *supra.*

**16.** In its denial of the Board's motion to dismiss, the circuit court acknowledged its hesitancy to

grant such motion because it perceived that the Board had failed to timely raise this ground, *i.e.*, the contemporaneous maintenance of both a grievance and a § 18A–4–7a mandamus, prior to the commencement of the mandamus hearing. Our review of the record in this matter indicates, however, that the Board promptly asserted this ground for its motion to dismiss in its written "Reply to Petition for Writ of Mandamus, Motion to Dismiss and Affirmative Defenses," which was filed approximately twenty-five days before the mandamus hearing date.

**17.** *See infra* note 24 for the statutory language enumerated in the first criteria.

at issue and because the applicant pool for the vacant teaching position included permanent employees of the Board. Similarly, another set of hiring criteria, set forth in the ninth paragraph of § 18A–4–7a [hereinafter "third criteria"],[18] do not govern the instant decision because these factors favor employees on the preferred recall list only when no employees returning from a leave of absence with greater seniority than the "riffed" employee or permanent employees apply for the position.

However, the Board suggests that the remaining cluster of hiring guidelines, contained in the latter portion of the first paragraph of § 18A–4–7a [hereinafter "second criteria"],[19] do apply to the hiring decision at issue in this case as "one or more permanently employed instructional personnel appl[ied] for a classroom teaching position and me[t] the standards set forth in the job posting," W. Va.Code § 18A–4–7a. The Board contends that it followed these criteria in selecting Ms. Lawrence for the business teacher position. Pursuant to the plain statutory language of W. Va.Code § 18A–4–7a, the Board maintains that it was not required to exclude from consideration former employees

or nonemployees simply because permanent employees also had applied.[20]

While the Board acknowledges that the second hiring criteria implicitly favor permanent employees over nonemployees by virtue of the fact that permanent employees would be likely to be considered more qualified based upon teaching experience and seniority, such criteria do not preclude the consideration of either former employees on the preferred recall list or individuals who have never been employed by the Board. In addition, the Board suggests that if the circuit court's interpretation is adopted, it would be absurd to require the Board to specifically notify preferred recall individuals of job postings, as is required by statute, or for such individuals to apply for such positions, because preferred recall persons could never be considered for such positions as long as a permanent employee also had applied.[21]

Ms. Ewing responds that the circuit court correctly interpreted W. Va.Code § 18A–4–7a as requiring that a board of education prefer permanent employees over nonemployees or former employees on the preferred recall list when making hiring decisions. In support of her argument, Ms. Ewing indicates that the statute governing

**18.** *See infra* note 26 describing the third criteria.

**19.** *See infra* note 25 for the factors to be considered under the second criteria.

**20.** The WVEA, Amicus Curiae to this appeal, supports the Board's decision to base its filling of the business teacher vacancy on the second set of hiring criteria contained in W. Va.Code § 18A–4–7a and to select the most qualified applicant pursuant to those guidelines. Moreover, the WVEA shares the Board's position that the Legislature did not intend to require a board of education to automatically prefer permanent professional personnel over former employees on the preferred recall list when making employment decisions.

**21.** The Board additionally requests this Court to consider the ruling of the West Virginia Education and State Employees Grievance Board in *Grogg v. Kanawha County Bd. of Educ.*, No. 96–20–521 (W. Va. Educ. & State Employees Grievance Bd. Apr. 18, 1997), which has addressed this particular statutory issue. In *Grogg*, the grieved permanent employee, who had applied for a teaching position, complained when a former employee, who was on the preferred recall list, was awarded the job. The grieved employee

contended that the board of education, which had employed the second hiring criteria contained in W. Va.Code § 18A–4–7a, should have preferred the permanent employee over the "riffed" employee. Rejecting these arguments, the Administrative Law Judge determined that

> when a vacancy occurs, all employees who are certified and/or licensed for the position are to be given an opportunity to apply, including those on preferred recall.... [T]he statute indicates ... that, when regular, full-time, as well as preferred recall, employees apply for a position, the employee on the preferred recall list does not automatically become vested with recall rights, unless and until the regular, full-time employees either are not qualified, or are not interested in the position. If the regular, full-time employees are both qualified and wish to be considered for the vacancy, then the administrator must look to the criteria set forth for selection in *Code* § 18A–4–7a to select the most qualified candidate for the position.

Because the *Grogg* grievance is still under litigation and because we are able to resolve this statutory interpretation issue on the basis of other authority, we choose not to consider this grievance ruling in rendering our decision in the instant appeal.

the employment of professional educational personnel historically has permitted the consideration of an employee's seniority. *See* W. Va.Code § 18A–4–8b (1988) [recodified at W. Va.Code § 18A–4–7a (1993) (Repl.Vol. 1997) ].[22] Despite the recodification of and subsequent amendments to this statutory provision, Ms. Ewing maintains that the Legislature has not eliminated the requirement that a board of education must first fill job vacancies with permanent professional employees before considering nonemployees or former employees on the preferred recall list for such positions. *Citing State ex rel. Melchiori v. Board of Educ. of County of Marshall,* 188 W.Va. 575, 425 S.E.2d 251 (1992); Syl. pt. 3, *Dillon v. Board of Educ. of County of Wyoming,* 177 W.Va. 145, 351 S.E.2d 58 (1986) ("County boards of education have substantial discretion in matters relating to the hiring, assignment, transfer, and promotion of school personnel. Nevertheless, this discretion must be exercised reasonably, in the best interests of the schools, and in a manner which is not arbitrary and capricious.").

In addition, Ms. Ewing suggests that the applicable statute permits the rehiring of employees on the preferred recall list based upon their seniority. W. Va.Code § 18A–4–7a. Thus, when both a permanent employee and a "riffed" employee apply for the same job opening, Ms. Ewing states that the "riffed" employee may be hired only if the permanent employee is not qualified for the position, by reason of credentials, experience, or seniority, or does not wish to accept the assignment. Responding to the Board's contention that the requirement of notifying preferred recall persons of job vacancies would be futile if permanent employees are always preferred in hiring decisions, Ms. Ewing maintains that such notification is necessary because otherwise "riffed" employees would not learn of such positions through the posting process.[23]

 With this assignment of error, we have been requested to ascertain the meaning of various portions of W. Va.Code § 18A–4–7a (1993) (Repl.Vol.1997), which sets forth guidelines for the employment of professional educational personnel. To interpret a statutory provision, we must determine the legislative intent underlying the statute at issue. Syl. pt. 2, *Mills v. Van Kirk,* 192 W.Va. 695, 453 S.E.2d 678 (1994). " ' "In ascertaining legislative intent, effect must be given to each part of the statute and to the statute as a whole so as to accomplish the general purpose of the legislation." Syl. Pt. 2, *Smith v. State Workmen's Compensation Commissioner,* 159 W.Va. 108, 219 S.E.2d 361 (1975).' Syl. pt. 3, *State ex rel. Fetters v. Hott,* 173 W.Va. 502, 318 S.E.2d 446 (1984)." Syl. pt. 4, *State ex rel. Hechler v. Christian Action Network,* 201 W.Va. 71, 491 S.E.2d 618 (1997). As a further aid to ascertaining legislative intent,

> " ' "[a] statute should be so read and applied as to make it accord with the spirit, purposes and objects of the general system of law of which it is intended to form a part; it being presumed that the legislators who drafted and passed it were familiar with all existing law, applicable to the subject matter, whether constitutional, statutory or common, and intended the statute to harmonize completely with the same and aid in the effectuation of the general purpose and design thereof, if its terms are consistent therewith." Syllabus Point 5, *State v. Snyder,* 64 W.Va. 659, 63 S.E. 385 (1908).' Syl. Pt. 1, *State ex rel. Simpkins v. Harvey,* [172] W.Va. [312], 305 S.E.2d 268 (1983)." Syl. Pt. 3, *Shell v.*

**22.** The relevant text of W. Va.Code § 18A–4–8b (1988) provides:

> "A county board of education shall make decisions affecting promotion and filling of any classroom teacher's position occurring on the basis of qualifications. If the applicant with the most seniority is not selected for the position a written statement of reasons shall be given to the applicant with the most seniority with suggestions for improving the applicant's qualifications."

*Bolyard v. Kanawha County Bd. of Educ.,* 194 W.Va. 134, 137, 459 S.E.2d 411, 414 (1995) (per curiam).

**23.** Ms. Ewing further challenges the Board's application of the § 18A–4–7a hiring criteria to the credentials of the candidates for the vacant business teacher position. Due to our finding that Ms. Ewing's protest of the Board's employment decision by mandamus was improperly before the circuit court, we need not further address the propriety of the Board's selection process.

*Bechtold,* 175 W.Va. 792, 338 S.E.2d 393 (1985) [ (per curiam) ].

Syl. pt. 1, *State v. White,* 188 W.Va. 534, 425 S.E.2d 210 (1992). With these principles in mind, we turn now to the challenged statutory language and the general body of law governing educational employment decisions.

To more effectively understand the import of W. Va.Code § 18A–4–7a, it is necessary to examine the policies underlying the law of educational employment decisions. This State has firmly resolved to provide our schoolchildren with the best possible educational opportunities. Specifically, the West Virginia Constitution mandates that "[t]he legislature shall provide, by general law, for a thorough and efficient system of free schools." W. Va. Const. art. XII, § 1. This Court likewise has recognized that

> [p]ublic education is a fundamental constitutional right in this State, and a prime function of the State government is to develop a high quality educational system, an integral part of which is qualified instructional personnel.... "[T]he State has a legitimate interest in the quality, integrity and efficiency of its public schools in furtherance of which it is not only the responsibility but also the duty of school administrators to screen those [in] ... the teaching profession to see that they meet this standard." *James v. West Virginia Board of Regents,* 322 F.Supp. 217, 229 (S.D.W.Va.), *aff'd,* 448 F.2d 785 (4th Cir. 1971) [ (per curiam) ]. The county boards of education perform these functions on behalf of the State in the hiring and placement of teachers.

*Dillon v. Board of Educ. of County of Wyoming,* 177 W.Va. at 148, 351 S.E.2d at 61 (additional citations omitted).

■ In order to ensure the highest possible quality of education in West Virginia, those charged with hiring our State's educators, county boards of education, are allowed broad discretion in employing the most qualified individuals to teach our young people. "County boards of education have substantial discretion in matters relating to the hiring, assignment, transfer, and promotion of school personnel." Syl. pt. 3, in part, *Dillon,* 177 .W.Va. 145, 351 S.E.2d 58. Ac-

cord Syl. pt. 2, *Cowen v. Harrison County Bd. of Educ.,* 195 W.Va. 377, 465 S.E.2d 648 (1995). *See also State ex rel. Monk v. Knight,* 201 W.Va. 535, 539, 499 S.E.2d 35, 39 (1997) ("County boards of education are statutorily directed to make ... [educational employment] decisions.... This selection of candidates puts boards of education in a position where they must use their discretion in rating the qualifications of the applicants." (footnote omitted)); *Mason County Bd. of Educ. v. State Superintendent of Sch.,* 160 W.Va. at 351, 234 S.E.2d at 323 ("We recognize that considerable authority is vested in a county board of education to operate its public schools." (citation omitted)).

■ For this reason, while "[t]his Court has a duty to oversee that the objective of filling this State's schools with 'qualified instructional personnel' is met," *State ex rel. Melchiori v. Board of Educ. of County of Marshall,* 188 W.Va. at 581, 425 S.E.2d at 257 (citation omitted), the judiciary is nonetheless reluctant to find fault with such hiring decisions unless the scheme employed clearly does not comport with the statutory guidelines for such decisions or is, in other respects, inappropriate. *See Cowen v. Harrison County Bd. of Educ.,* 195 W.Va. at 381, 465 S.E.2d at 652 ("We are mindful of the delicate balance measuring the extent of judicial involvement in the public schools of this State and of our obedience to the West Virginia Constitution, which assures every student in West Virginia a thorough and efficient education." (citation omitted)); Syl. pt. 3, in part, *Dillon,* 177 W.Va. 145, 351 S.E.2d 58 ("[The] discretion [of a county board of education to make educational employment decisions] must be exercised reasonably, in the best interests of the schools, and in a manner which is not arbitrary and capricious.").

With this understanding of the policies underlying educational employment decisions in mind, we can now more informatively interpret W. Va.Code § 18A–4–7a. Reviewing all parts of the statute in question, it is apparent that the Legislature intended to create three distinct methods by which a county board of education may make employment decisions. The first hiring criteria are located in the first part of the first paragraph of § 18A–4–

7a.[24] These criteria apply with respect to "the hiring of professional personnel other than classroom teachers" and "the hiring of new classroom teachers." W. Va.Code § 18A–4–7a. At the end of the section's first paragraph is located the second set of guidelines.[25] The second set of hiring criteria apply when "one or more permanently employed professional personnel apply for a classroom teaching position and meet the standards set forth in the job posting." *Id.* The final hiring criteria are found in the ninth paragraph of § 18A–4–7a and pertain to those employees who are on the preferred recall list as a result of a reduction in force.[26] Under the third criteria, a "riffed" employee shall be reassigned "on the basis of seniority if no regular, full-time professional personnel, or those returning from leaves of absence with greater seniority, are qualified, apply for and accept such position." *Id.*

Both the circuit court and Ms. Ewing construe this statute as requiring an automatic preference of permanent professional employees when educational employment decisions are made. True, that portion of the statute addressing the reassignment of preferred recall employees mandates the consideration of seniority rights of permanent employees when such "riffed" employees are reassigned. *See* W. Va.Code § 18A–4–7a; *State ex rel. Melchiori v. Board of Educ. of County of Marshall,* 188 W.Va. 575, 425 S.E.2d 251. In this manner, it is apparent that, where no full-time professional personnel or those personnel returning from a leave of absence who have greater seniority than the "riffed" employee is qualified, applies for, and accepts the vacant position, a board must prefer those former employees on the preferred recall list before soliciting

**24.** The first criteria described in W. Va.Code § 18A–4–7a (1993) (Repl.Vol.1997) provide:

A county board of education shall make decisions affecting the hiring of professional personnel other than classroom teachers on the basis of the applicant with the highest qualifications. Further, the county board shall make decisions affecting the hiring of new classroom teachers on the basis of the applicant with the highest qualifications. In judging qualifications, consideration shall be given to each of the following: Appropriate certification and/or licensure; amount of experience relevant to the position or, in the case of a classroom teaching position, the amount of teaching experience in the subject area; the amount of course work and/or degree level in the relevant field and degree level generally; academic achievement; relevant specialized training; past performance evaluations conducted pursuant to section twelve [§ 18A–2–12], article two of this chapter; and other measures or indicators upon which the relative qualifications of the applicant may fairly be judged.

**25.** The second criteria set forth in W. Va.Code § 18A–4–7a instruct:

If one or more permanently employed instructional personnel apply for a classroom teaching position and meet the standards set forth in the job posting, the county board of education shall make decisions affecting the filling of such positions on the basis of the following criteria: Appropriate certification and/or licensure; total amount of teaching experience; the existence of teaching experience in the required certification area; degree level in the required certification area; specialized training directly related to the performance of the job as stated in the job description; receiving an overall rating of satisfactory in evaluations

over the previous two years; and seniority. Consideration shall be given to each criterion with each criterion being given equal weight. If the applicant with the most seniority is not selected for the position, upon the request of the applicant a written statement of reasons shall be given to the applicant with suggestions for improving the applicant's qualifications.

**26.** The third criteria contained in W. Va.Code § 18A–4–7a direct:

All professional personnel whose seniority with the county board is insufficient to allow their retention by the county board during a reduction in work force shall be placed upon a preferred recall list. As to any professional position opening within the area where they [sic] had previously been employed or to any lateral area for which they [sic] have [sic] certification and/or licensure, such employee shall be recalled on the basis of seniority if no regular, full-time professional personnel, or those returning from leaves of absence with greater seniority, are qualified, apply for and accept such position. Before position openings that are known or expected to extend for twenty consecutive employment days or longer for professional personnel may be filled by the board, the board shall be required to notify all qualified professional personnel on the preferred list and give them an opportunity to apply, but failure to apply shall not cause such employee to forfeit any right to recall. The notice shall be sent by certified mail to the last known address of the employee, and it shall be the duty of each professional personnel to notify the board of continued availability annually of any change in address or of any change in certification and/or licensure.

or accepting applications from candidates exterior to that particular school system. In preferring "riffed" employees over outside applicants, the board is required to reassign first the employee on the preferred recall list having the greatest seniority.

However, contrary to the interpretation suggested by Ms. Ewing and the circuit court, nowhere in § 18A–4–7a does the Legislature include a specific requirement that the hiring board of education must prefer permanent professional employees over applicants who are either former employees or nonemployees when filling job vacancies from a pool of applicants. In fact, the language of the second hiring criteria enumerated in § 18A–4–7a suggests that such a preference is not required. The second criteria begin by indicating that they apply when "one or more permanently employed instructional personnel apply for a classroom teaching position." W. Va.Code § 18A–4–7a. After listing the criteria to be considered in assessing the applicants' qualifications, which include seniority, the text specifically states that "[c]onsideration shall be given to each criterion with each criterion being given equal weight." *Id.* Thus, it is apparent that one applicant is not to be considered more qualified for a position than another applicant solely because the former has greater seniority than the latter. Furthermore, the second hiring criteria, in the last sentence thereof, expressly dispel any remaining doubts as to whether a permanent employee should be preferred over a former employee or nonemployee by anticipating that employment decisions may occur in which "the applicant with the most seniority is not selected for the position." *Id.*

By construing these provisions in this manner, we are best able to give effect to the statutory language in its entirety rather than improperly emphasizing a particular word, phrase, or sentence. *See* Syl. pt. 2, in part, *Mills v. Van Kirk*, 192 W.Va. 695, 453 S.E.2d 678 ("To determine the true intent of the legislature, courts are to examine the statute in its entirety and not select any single part, provision, section, sentence, phrase or word." (internal quotation marks and citation omitted)). Any other construction would be inconsistent with the recognized goal of providing the best educational instructors for our schoolchildren because an automatic preference of permanent employees would virtually preclude the employment of any nonemployees or former employees on the preferred recall list if the applicant pool included both permanent employees and nonemployees and/or former employees. Such a preference might also eliminate the selection of instructional personnel on the basis of their qualifications if the most qualified applicant happened not to be the permanent employee. Indeed, we often have emphasized the duty of a board of education to select from among a pool of applicants the educator who is most qualified to fill a vacant teaching position. *See, e.g.,* Syl. pt. 4, in part, *State ex rel. Monk v. Knight*, 201 W.Va. 535, 499 S.E.2d 35 (1997) ("W. Va.Code § 18A–4–7a provides the criteria ... [a county] board of education must take into consideration when determining which candidate is the most qualified [to fill a vacant teaching position]. The candidate who is the most qualified must be chosen to fill the vacancy."); Syl. pt. 7, in part, *Triggs v. Berkeley County Bd. of Educ.*, 188 W.Va. 435, 425 S.E.2d 111 (1992) ("Under *W. Va.Code*, 18A–4–7a [1990] (formerly *W. Va. Code*, 18A–4–8b [1983] ), hiring must always be done on the basis of qualifications...."); Syl. pt. 4, in part, *Board of Educ. of County of Wood v. Enoch*, 186 W.Va. 712, 414 S.E.2d 630 (1992) ("A board of education making a hiring decision under *W. Va.Code*, 18A–4–8b(a) [1988] [recodified at W. Va.Code § 18A–4–7a (1993) (Repl.Vol.1997) ] should use its best professional judgment to select the applicant best suited to the needs of the students based on qualifications and evaluation of the applicants' past service."); Syl. pt. 1, in part, *Dillon v. Board of Educ. of County of Wyoming*, 177 W.Va. 145, 351 S.E.2d 58 ("Under W. Va.Code, 18A–4–8b(a) (1983) [recodified at W. Va.Code § 18A–4–7a (1993) (Repl.Vol.1997) ], decisions of a county board of education affecting teacher promotions and the filling of vacant teaching positions must be based primarily upon the applicants' qualifications for the job....").

Accordingly, we hold that W. Va. Code § 18A–4–7a (1993) (Repl.Vol.1997) does not require a county board of education to

automatically prefer a permanent employee applicant for a vacant teaching position when the applicant pool for that position includes both permanent employees of the hiring board of education and nonemployees and/or former employees on the preferred recall list. We hold further that where the candidates for a classroom teaching position include both permanent employees of the hiring board of education and nonemployees and/or former employees on the preferred recall list, the second set of hiring criteria contained in the first paragraph of W. Va.Code § 18A-4-7a (1993) (Repl.Vol.1997) should be utilized in selecting the most qualified applicant to fill the vacant position. These guidelines provide that

[i]f one or more permanently employed instructional personnel apply for a classroom teaching position and meet the standards set forth in the job posting, the county board of education shall make decisions affecting the filling of such positions on the basis of the following criteria: Appropriate certification and/or licensure; total amount of teaching experience; the existence of teaching experience in the required certification area; degree level in the required certification area; specialized training directly related to the performance of the job as stated in the job description; receiving an overall rating of satisfactory in evaluations over the previous two years; and seniority. Consideration shall be given to each criterion with each criterion being given equal weight. If the applicant with the most seniority is

not selected for the position, upon the request of the applicant a written statement of reasons shall be given to the applicant with suggestions for improving the applicant's qualifications.

W. Va.Code § 18A-4-7a (1993) (Repl.Vol. 1997).

Applying this interpretation of § 18A-4-7a to the facts of this case, we find that the circuit court erred in construing the statute as requiring a county board of education to prefer in employment decisions permanent employees over nonemployees or former employees on the preferred recall list. Consequently, we reverse the circuit court's ruling in this regard.

### III.

### CONCLUSION

For the reasons discussed in the text of this decision, we vacate the writ of mandamus awarded by the Circuit Court of Summers County and reverse the ruling of the circuit court denying the Board's motion to dismiss Ms. Ewing's petition for writ of mandamus.

Vacated in part and Reversed in part.